UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHAWN BURNS, KEVIN BIEN, and BRIAN M. WISE, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>COUNTY OF NASSAU, and EDWARD MANGANO, in his Official Capacity as Nassau County Executive,<br><br>Defendants. | Case No. 17-cv-2721 (JMA)(SIL) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

VIRGINIA & AMBINDER, LLP
James Emmet Murphy, Esq.
Lloyd R. Ambinder, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080

*Attorneys for Plaintiffs*

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ........ iii

POINT I:
PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES FOR LATE PAYMENTS OF OVERTIME OWED UNDER THE FLSA ........ 4

POINT II:
THE 29 U.S.C. § 207(K) LAW ENFORCEMENT PARTIAL EXEMPTION ........ 8

A. Defendants Have Failed to Raise The Section 207(k) Partial Exemption ........ 9

B. In the Event Defendants Are Permitted to Argue the Section 207(k) Exemption, The Exemption Should Not Apply ........ 11

POINT III:
DAMAGE CALCULATIONS ........ 16

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

CASES PAGE

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946)....17, 18, 19, 20

*Arciello v. County of Nassau,*
Case No. 16-cv-3974 (E.D.N.Y. Oct. 30, 2017)....9

*Barfield v. N.Y. City Health & Hosps. Corp.,*
537 F.3d 132 (2nd Cir. 2008)....21

*Beardsley v. County of Saratoga,*
2026 U.S.Dist.LEXIS 20756 2026 WL 265997, Index No. 23-cv-1641 (N.D.N.Y. Feb. 2, 2026)
....4, 5

*Birdwell v. Gadsden*,
970 F.2d 802 (11th Cir. 1992) ....9

*Brooklyn Savings Bank v. O'Neil,*
324 U.S. 697 (1945) *abrogated on other grounds as stated in* Kelly v. 21 Grp., Inc., 2023 U.S.Dist.LEXIS 159389*33, 2023 WL 5831131, Index No. 22-cv-0226(MKB) (E.D.N.Y. Sep. 8, 2023) ....5

*Caserta v. Home Lines Agency, Inc.,*
273 F.2d 943 (2nd Cir. 1959)....22

*Coley v. Vannguard Urban Improvement Ass'n.,*
2018 U.S.Dist.LEXIS 50787 2018 WL 1513628, Index No. 12-cv-5565 (E.D.N.Y. Mar. 27, 2018)
....7

*Crespo v. County of Monroe,*
2015 U.S.Dist.LEXIS 66037 2014 WL 2406112, Index No. 10-cv-6590L (W.D.N.Y. May 20, 2015) ....8

*Inclan v. New York Hospitality Group, Inc.,*
95 F.Supp.3d 490 (S.D.N.Y. 2015) ....6

*Donovan v. Burger King Corp.,*
672 F.2d 221 (1st Cir. 1982)....21

*Foley v. City of Buffalo,*
2011 U.S.Dist.LEXIS 82285 2011 WL 3176455, Index No. 06-cv-49S (W.D.N.Y. July 27, 2011)
....16

*Gonzalez v. Allied Concrete Indus.*,
575 F.Supp.3d 336 (E.D.N.Y. 2021) ........................................................................................7

*Harold Levinson Assocs. v. Chao*,
37 Fed. Appx. 19 (2nd Cir. 2002)..........................................................................................20

*Holmes v. Washington.*,
1992 U.S.Dist.LEXIS 22550 Index No. C90-5366B (W.D.Washington Mar. 13, 1992) ............15

*Humphrey v. RAV Investigative & Sec. Servs.*,
61 F.Supp.3d 336 (S.D.N.Y. 2014) ..........................................................................................6

*Keawsri v. Ramen-Ya Inc.*,
2021 U.S.Dist.LEXIS 150399 2021 WL 3540671, Index No. 17-cv-2406 (S.D.N.Y. Aug. 10, 2021) ..........................................................................................................................21

*Kernan v. New York State Dept. of Fin. Servs.*,
2015 U.S.Dist.LEXIS 175777 Index No. 13-cv-3195 (E.D.N.Y. July 15, 2015).................... 10-11

*Kuebel v. Black & Decker, Inc.*,
643 F.3d 352 (2nd Cir. 2011)..................................................................................................23

*Mangahas v. Eight Oranges, Inc.*,
754 F.Supp.3d 468 (S.D.N.Y. Oct. 22, 2024)..........................................................................20

*Martin v. Coventry Fire Dist.*,
981 F.2d 1358 (1st Cir. 1992) *aff'd* 2021 U.S.App.LEXIS 32156 2021 FED App. 0485N (6th Cir. 2021) ..........................................................................................................................15

*Mariano v. Town of Orchard Park*,
2012 U.S.Dist.LEXIS 204455 Index No. 09-cv-0916S(Sr) (W.D.N.Y. Sep. 18, 2012) ................9

*Micone v. Sarene Servs., Inc.*,
2025 U.S.Dist.LEXIS 42088 2025 WL 736638, Index No. 20-cv-3273 (E.D.N.Y. Mar. 8, 2025) ..........................................................................................................................20

*McFarlane v. Harry's Nurses Registry*,
2020 U.S.Dist.LEXIS 58387 2020 WL 1643781, 17-cv-06350 (E.D.N.Y. Apr. 2, 2020)............21

*National Union of Hospital & Health Care Employees v. Carey*,
557 F.2d 278 (2nd Cir. 1977)..................................................................................................10

*Perry v. City of New York*,
78 F.4th 502 (2nd Cir. 2023) ...............................................................................19, 22, 23

*Pilot v. City of Yonkers,*
2021 U.S.Dist.LEXIS 184944 2021 WL 4429839, Index No. 19-cv-8169 (Sep. 27, 2021).........11

*Reich v. New York,*
3 F.3d 581 (2nd Cir. 1993)..........................................................................................11

*Reich v. Southern New England Telecomms. Corp.,*
121 F.3d 58 (2nd Cir. 1997)...................................................................19, 20, 21

*Rigopoulos v. Kervan,*
140 F.2d 506 (2nd Cir. 1943)..........................................................................................6

*Su v. CareCo Shoreline, Inc.,*
2023 U.S.Dist.LEXIS 56143 2023 WL 2743132, Index No. 21-cv-00401 (D.Conn. Mar. 31, 2023) ..............................................................................................................20

*Swan v. Board of Higher Education,*
319 F.2d 56 (2nd Cir. 1963) ..........................................................................................10

*Shah v. Consol. Edison Corp.,*
2006 U.S.Dist.LEXIS 79327 2006 WL 3155786, Index No. 05-cv-2868 (Oct. 26, 2006) ...........11

*Tyson Foods Inc. v. Bouaphakeo,*
577 U.S. 442 (2016)..........................................................................................18, 20

*United States v. Mangano,*
128 F.3d 442 (2nd Cir. 2025)..........................................................................................3

*United States v. Klinghoffer Bros. Realty Corp.,*
285 F.2d 487 (2nd Cir. 1960)..........................................................................................7

*Vance v. Vill. Highland Hills,*
2020 U.S. Dist.LEXIS 239386 2020 WL 7490100, Index No. 20-cv-00152 (N.D.Ohio Dec. 21, 2020) ..............................................................................................................15

*Vandermark v. City of New York,*
391 Fed.Appx. 957 (2nd Cir. 2010)................................................................................11

*Velez v. MedRite, LLC,*
2025 U.S.Dist.LEXIS 181728 2025 WL 2933588, Index No. 24-cv-02707 (July 9, 2025) ...........6

STATUTES

F.R.C.P. Rule 8(c)(1) ....................9, 11

F.R.C.P. Rule 15(a)(1) ....................10, 11

F.R.C.P. Rule 15(a)(2) ....................10, 11

29 C.F.R. § 516.2 ....................14

29 C.F.R. § 516.2(a)(5) ....................19

29 C.F.R. § 516.2(a)(7) ....................18

29 C.F.R. § 516.2(a)(6)(i) ....................18

29 C.F.R. § 516.2(a)(6)(ii) ....................19

29 C.F.R. § 553.50 ....................13, 14, 15

29 C.F.R. § 553.51 ....................13, 15, 16, 17, 19

29 C.F.R. § 553.201 ....................12

29 C.F.R. § 553.211(g) ....................9

29 C.F.R. § 553.224 ....................12

29 C.F.R. § 553.224(a) ....................12, 13

29 C.F.R. § 553.230 ....................9

29 CFR Section 778.106 ....................7

29 CFR Section § 785.11 ....................22, 23

20 U.S.C. § 203(e)(2)(c) ....................4

29 U.S.C. § 203(d) ....................4

29 U.S.C. § 206 ....................1, 2, 3, 4

29 U.S.C.A. § 207 ....................6, 7

29 U.S.C.A. § 207(a) ....................9, 11

29 U.S.C.A. § 207(o) ....................................................................................................13

29 U.S.C. § 207(k) .................................................................................................... *passim*

The facts of this case are straightforward. Plaintiffs – 582 Corrections Officers of various specific job titles ("CO") employed by Nassau County – performed overtime work, and consistently failed to receive their overtime pay in a timely manner. Under established statutory rules, the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq.*, entitles Plaintiffs to receive liquidated damages in an amount equal to late-paid overtime wages. There is no allegation here that the workers did not actually receive the overtime payments they were owed, or that workers performed work for which they were not eventually compensated. The only claim at issue is Plaintiffs' entitlement to liquidated damages for late-paid overtime.

The claims in this case extend from May of 2014 to the present. According to the records produced by Nassau County (*See* February 17 Declaration of James Emmet Murphy ("Murphy Dec."), Ex. D), wage payments were to be made to Plaintiffs in two separate biweekly checks. Each documented two-week (14 day) pay period began on Friday, and concluded on the second Thursday thereafter. Payroll checks containing regular, "straight time" pay earning during the bi-weekly period were issued on the second Thursday at the close of the pay period. Checks containing supplemental "overtime" checks were to be issued to CO's on the following Wednesday.

For example: (*See* Murphy Dec. Ex. D, BATES NOS 00001-00008): for the biweekly pay period from Friday, January 4, 2019 through Thursday, January 17, 2019, Defendants' pay calendar reflects the "Annual Payroll 2019" or "F/T Payroll" straight-time check distribution date as Thursday, January 17, 2019. These paychecks are strictly limited to distribution of the correction officer's scheduled straight-time pay. No earned overtime is included in this check. Defendants' "Supplemental" payroll calendar reflects the overtime compensation pay date of Wednesday,

January 23, 2019. These checks were limited to payment of CO's earned overtime for the preceding bi-weekly pay period.

This longstanding policy and practice allowed Nassau County additional time to seamlessly tabulate, process, and pay overtime wages each pay period after the regular-time checks were issued for many years. However, starting in or about 2013, overtime was almost always paid weeks late to Nassau County CO's. For instance, during the bi-weekly pay period from Friday, March 31, 2017 through Thursday, April 13, 2017, regular-time pay was to be paid on April 13, 2017, and overtime pay was to be paid on Wednesday, April 19, 2017. *See* Murphy Dec. Ex. D, BATES NOS 000017-000024. During that period, Officer Richard Afanador earned 80 hours of straight time and 31 hours of overtime. Officer Afanador was correctly paid his 80 hours of straight time on April 13, 2017. (*See* Murphy Dec. Ex. T, Defendants' provided sample payroll data for 2017, p. 29). However, Officer Afanador was forced to wait until May 3, 2017 for his $2,158.42 overtime check.[1] Under the ordinary rules of 29 U.S.C. § 206 *et seq*., Afanador would be entitled to receive $2,158.42 in liquidated damages for these late payments.

The delays in overtime payments were systemic and nearly total. During the sampling period of payroll data agreed to by the parties – which constitutes payroll records for 64 workers (10% of the class) across 52 total weeks of work spread across three different years (9% of the statute of limitations period), for a total of 1,694 biweekly pay periods – Defendants' records reflect $374,895.12 in overtime payments for workweeks where Plaintiffs worked overtime on top of working a full 80 hours of straight-time work during the two-week pay period. Of that, only $58,061.98 – 15.5% of these total overtime payments – were paid timely. A full *84.5% of overtime*

[1] During the bi-weekly pay period Officer worked 4.5 hours of overtime worked on March 31, 2017; 4.5 hours of overtime worked on April 3, 2017; 4.5 hours of overtime worked on April 7, 2017; 4.5 hours of overtime on April 8, 2019; 8 hours of overtime on April 9, 2019; and 5 hours of overtime on April 11, 2017.

*payments* were paid late; including a full 7.8% of total overtime payments made more than two paychecks late. *See* Murphy Dec., Ex. W, damage summary. In many instances, workers would receive some of their overtime payments for a particular pay period timely, and others for the same pay period untimely, as a result of Defendants' practice of arbitrarily delaying processing of overtime slips. For example, Plaintiff Brian Ohea, for the pay period September 5, 2014 through September 18, 2014, worked 80 hours of straight time and 7.5 hours of overtime. 2.5 hours of this overtime, for work performed on September 9, 2014, was timely paid in the overtime paycheck issued on September 24, 2014. The remaining 5 hours of overtime – for 2.5 hours worked on September 17, 2014; and 2.5 hours worked on September 18, 2014 – were not paid until November 5, 2014, six weeks after it was due to be paid. (*See* Murphy Dec. Ex. S, 2014 Sample Payroll data, at p. 10).

This practice of routinely delaying overtime payments was implemented deliberately by the Nassau County Sheriff's Department. Beginning in approximately 2008, Michael Sposato became acting Sheriff of Nassau County (*See* Murphy Dec. Ex. X., August 9, 2011 Newsday Article entitled "Nassau Oks sheriff appointment."). At some point thereafter, but prior to the beginning of the statute of limitations period in this action, Sposato implemented a plan for the Sheriff's Department, which included Corrections Officers, to gum up the successfully established policy and practice of processing overtime payments. Specifically, Sposato issued a directive that required his personal approval of overtime payments. According to Sposato, "[e]very single unit every day sent me to my office a printout of their overtime for the day before." (Murphy Dec. Ex. E, Sposato Tr. pp. 28:22-29:3). Occasionally, Sposato would perform checks of the physical overtime slips reflecting workers' overtime work for approval. (Sposato Tr. p. 27:5-8). According to Louis Buonomo, the official charged with processing overtime payments from 2007 through

his retirement in September of 2017, the overtime procedure first implemented by Sheriff Sposato resulted in consistent delayed overtime payments throughout the time period at issue in this action. *See* Murphy Dec. Ex. F, Buonomo Tr. p. 14:10-13 ("after a while, everything was going into the Sheriff's Department – to Mr. Sposato's office – and then we would get them as we would get them"); p. 16:2-8 ([Sposato] "would let me come in and see him, and he would have stacks of slips all over the place and I would say to – prior to going in to see him, I'd say to the secretary, like, 'Why aren't I getting the slips', and then he would call me in and he'd have slips all over"); p. 19:3-6 ("[']I worked this day. How come I don't have it'. I'd say 'well, we didn't get the slip', and then eventually, you know, a lot of times it wouldn't come in until the next payroll came in"). Another employee in the payroll department testified that "we used to put everybody combined into one, then the sheriff, Sheriff Sposato, required us to send them in to him by each unit in alphabetical order. They had to be time stamped and sent into him for review… *We only had to do that when he became sheriff." See* Hembach Tr. p. 16:5-22.[Emphasis added][2]

Indeed, Sheriff Sposato specifically testified in his deposition in this action that whenever he would find overtime slips that he didn't believe had been fully verified, he would "kick them back" to workers to correct, which he admitted would result in delays of overtime payments by two weeks to the next overtime pay check. *See* Sposato Tr. p. 113:4-22 ("I'm not saying none of this is because of me because I kicked slips back that were wrong. That's one thing that's true… if they were supposed to be getting – they worked it on April 1 and the pay period is getting paid April 8th, two weeks later they got it paid on the 22nd"). This is specifically and unquestionably unlawful, as will be set forth in detail, *infra*.

[2] When asked at his deposition, Sposato specifically testified that in his dealings with Lou Buonomo and Susan Hembeck, Sposato never had any reason to believe that they were dishonest people. *See* Sposato Tr., pp. 74:22-75:5.

Nassau County – and, specifically, the Defendant individually named in his official capacity in this case, Edward Mangano, who was Nassau County Executive at the time this action was filed, and before his subsequent criminal convictions for honest services fraud and obstruction of justice, which were upheld on appeal (*see* United States v. Mangano, 128 F.3d 442 (2nd Cir. 2025)) – boasted of Sposato's work in limiting overtime payments to Corrections Officers such as the Plaintiffs here. *See* Robert Brodsky, *Nassau OKs Sheriff Appointment*, Newsday, August 9, 2011, (Murphy Dec. Ex. X) ("Michael Sposato's rise from jailhouse cook to the top ranks of the Nassau County correctional system is now complete…'Mike Sposato has effectively implemented cost-cutting policies at the jail…" Mangano said. Mangano credited Sposato with reducing overtime at the Nassau County Correctional Center to its lowest point since 2003").

While several issues complicate the precise amounts of damages to be assessed in this case – as will be explained, *infra* – the fundamental liability of Nassau County is clear. Plaintiffs were indisputably entitled to overtime pay under 29 U.S.C. § 206 *et seq.* It cannot be disputed, based on Defendants' own records, that overtime payments were routinely late. It cannot be disputed, as a matter of law, that Plaintiffs are entitled to liquidated damages for the late-paid overtime. The only issue which remains is what is the precise extent of damages to which Plaintiffs are entitled.

**POINT I:**

**PLAINTIFFS ARE ENTITLED TO LIQUIDATED DAMAGES FOR LATE PAYMENTS OF OVERTIME OWED UNDER THE FLSA**

Plaintiffs are employed by the County of Nassau to work as Correction Officers, Correction Corporals, Correction Sergeants, Correction Lieutenants, or Correction Captains. Nassau County constitutes an "employer" under 29 U.S.C. § 203(d) ("'Employer' includes… a public agency"); Plaintiffs here constitute "employees" under 20 U.S.C. § 203(e)(2)(c) ("employee" includes "any individual employed by a State, political subdivision of a State, or an interstate governmental

agency," with exceptions not relevant here). As employees employed by employers, Plaintiffs are subject to the minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 206 *et seq.*

"The FLSA includes a 'prompt payment' requirement. As relevant here, '[p]ayment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due." Beardsley v. County of Saratoga, 2026 U.S.Dist.LEXIS 20756*30, 2026 WL 265997, Index No. 23-cv-1641 (AJB)(ML) (N.D.N.Y. Feb. 2, 2026) (internal citation omitted). As the Second Circuit has observed, "First, it is clear that the FLSA requires wages to be paid in a timely fashion. Second, the cases demonstrate that what constitutes timely payment must be determined by objective standards – and not solely by reference to the parties' contractual arrangements. Indeed, to link the statutory obligations under the FLSA to the parties' collective bargaining agreement would be contrary to the whole thrust of the statute, which 'was not designed to codify or perpetuate [industry] customs and contracts' but 'to achieve a uniform national policy' in terms of wages and hours." Rogers v. City of Troy, 148 F.3d 52, 57 (2nd Cir. 1996). "Although there is no bright line rule, several courts in this circuit have held that two weeks is an unreasonable amount of time for an employer to delay a paycheck." Beardsley, *supra*, 2026 U.S. Dist.LEXIS 20756*31.

Under the FLSA, workers are entitled to receive liquidated damages, in the amount of 100% of the amount of FLSA wages not timely paid, whenever wages are paid late. *See* Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 707-708 (1945): "the liquidated damage provision is not penal in its nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages. It constitutes a Congressional recognition that failure to pay the statutory minimum on time may

be so detrimental to maintenance of the minimum standard of living 'necessary for health, efficiency and general well-being of workers' and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being"; *abrogated on other grounds as stated in* Kelly v. 21 Grp., Inc., 2023 U.S.Dist.LEXIS 159389*33, 2023 WL 5831131, Index No. 22-cv-0226(MKB) (E.D.N.Y. Sep. 8, 2023) ("Although parts of Brooklyn Savings Bank have been superseded by statute, its holding that employees may not waive the right to recover liquidated damages under the FLSA remains good law"). *See generally* Humphrey v. RAV Investigative & Sec. Servs., 61 F.Supp.3d 336, 360 (S.D.N.Y. 2014) ("where wages have merely been paid late, as opposed to not having been paid at all, courts have construed Section 216(a) to mean that only liquidated damages (rather than double damages) should be awarded, as reasonable compensation for harm occasioned by, in particular, the delay component of the defendant's unlawful pay practices"); Velez v. MedRite, LLC, 2025 U.S.Dist.LEXIS 181728*7-8, 2025 WL 2933588, Index No. 24-cv-02707 (GHW)(SN) (July 9, 2025) ("Under the FLSA, an employer has an implied obligation to pay its employee on a regularly scheduled pay period… The failure to comply with FLSA's prompt-payment requirement can result in liquidated damages in the amount of the late-paid wages"); Rigopoulos v. Kervan, 140 F.2d 506, 507 (2nd Cir. 1943) ("29 U.S.C.A. § 207, plainly contemplates that overtime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day. Hence the failure to pay it, when due, was a violation of section 7, which rendered the employer 'liable,' as declared in section 16(b), not only for the unpaid overtime compensation but also for liquidated damages in an additional equal amount. This is a single and entire liability. It is not discharged in toto by paying one-half of it"); Inclan v. New York Hospitality Group, Inc., 95 F.Supp.3d 490, 499-500 (S.D.N.Y. 2015) ("The FLSA has long been interpreted to include a

'prompt payment' requirement. Whether the prompt payment requirement has been violated 'must be determined by reference to objective standards.' Specifically, payment of 'overtime compensation earned in a particular workweek must [generally] be paid on the regular pay day for the period in which such workweek ends' and in any event 'may not be delayed for a period longer than is reasonably necessary to compute and arrange for payment of the amount due.' Defendants do not – and could not – argue that the Restaurant's claimed practice of making ad hoc corrections to unlawfully low pay when prompted by employees met objective standards of prompt payment") (internal citations omitted).

"Section 7 of the Act, 29 U.S.C.A. § 207, plainly contemplates that overtime compensation shall be paid in the course of employment and not accumulated beyond the regular pay day… an employer, by making tardy restitution of the amount of overtime compensation due, did not relieve himself of the liability for liquidated damages which had accrued on the original failure to pay." United States v. Klinghoffer Bros. Realty Corp., 285 F.2d 487, 491 (2nd Cir. 1960). "A separate right to liquidated damages exists that is not conditioned on default at the time suit is begun. Courts have long interpreted the FLSA to include a prompt payment requirement. The FLSA requires that minimum wages and overtime wages for the hours worked be paid when they become due. Employees whose wages are not timely paid are entitled to statutory damages, despite the fact that the employees received their full wages prior to instituting their lawsuit." Coley v. Vannguard Urban Improvement Ass'n., 2018 U.S.Dist.LEXIS 50787*41-42, 2018 WL 1513628, Index No. 12-cv-5565 (PKC)(RER) (E.D.N.Y. Mar. 27, 2018) (internal citations and punctuation omitted).

"Under federal regulations dealing with the FLSA '[t]he general rule is that overtime compensation earned in a particular workweek must be paid on the regular payday for the period in which such work week ends.' 29 CFR Section 778.106. The only exception to that rule applies

when 'the correct amount of overtime compensation cannot be determined until sometime after the regular pay period[.]' But even when that exception applies, employers are required to pay the excess overtime compensation 'as soon after the regular pay period as is practicable.'" Gonzalez v. Allied Concrete Indus., 575 F.Supp.3d 336, 341-342 (E.D.N.Y. 2021).

Here, Defendant Nassau County established a longstanding uniform system for generating overtime payroll. Overtime checks were issued 6 days later than regular-time checks, so that the County could have the time to input and process overtime payments. Prior to Michael Sposata becoming Sheriff, this delay was sufficient to ensure that overtime payments were made in a timely manner. *See* Murphy Dec. Ex. F, Buonomo Tr. pp. 32:5-11; 33:2-13. *See generally*, Buonomo Tr. pp. 62:25-63:4 ("Q: was everything running smoothly up until the time when Sheriff Sposato decided he wanted to start review the overtime slips? A: Yes."). Under this system in place prior to the time Sheriff Sposato became Sheriff and started to require that overtime slips be sent to his office for his personal review prior to their being processed by the payroll department, workers generally received overtime payments timely, with rare exceptions. During the statute of limitations period in this action, which took place entirely *after* Mr. Sposato began to require that the overtime slips be sent to his office prior to being processed by the payroll department, Plaintiffs' calculations, set forth in Point III, *infra*, for the amount of FLSA overtime paid untimely amounts to $32,566,303.44, which would be the amount of liquidated damages the Plaintiffs are entitled to.

**POINT II:**

**THE 29 U.S.C. § 207(K) LAW ENFORCEMENT PARTIAL EXEMPTION**

The workers here are Corrections Officers employed by Nassau County, which raises the particular issue of the partial overtime exemption contained in 29 U.S.C. § 207(k) for "public

agenc[ies]" employing individuals engaged in "law enforcement activities." Section 207(k) is, to say the least, not a model of clarity. *See* Crespo v. County of Monroe, 2015 U.S.Dist.LEXIS 66037*, 2014 WL 2406112, Index No. 10-cv-6590L (W.D.N.Y. May 20, 2015) ("In plain English – which is not the language of the statute itself – what this statute does is set a higher threshold number of hours that law enforcement personnel can work in a 28 day work period – or a proportional number of hours in a shorter work period of at least seven days – before these employees become entitled to overtime compensation"). For law enforcement personnel – which includes corrections officers, *see* 29 C.F.R. § 553.211(g) – that threshold is "the ratio of 171 hours to 28 days for employees engaged in law enforcement activities [which] is 6.11 hours per day (rounded)." *See* 29 C.F.R. § 553.230. Employers bear the burden of proving the applicability of Section 207(k). *See* Birdwell v. Gadsden, 970 F.2d 802, 805 (11th Cir. 1992) ("The burden is on the employer to prove he has adopted a 7(k) workweek exemption").

**A. Defendants Have Failed to Raise The Section 207(k) Partial Exemption**

Defendants are barred from raising the applicability of the Section 207(k) exemption in this case. The partial exemption contained in 29 U.S.C. § 207(k) is an affirmative defense upon which the Defendant bears the burden of proof. *See, e.g.* Mariano v. Town of Orchard Park, 2012 U.S.Dist.LEXIS 204455*6, Index No. 09-cv-0916S(Sr) (W.D.N.Y. Sep. 18, 2012) ("The exemption provided by 29 U.S.C. § 207(k) is an affirmative defense"). Pursuant to F.R.C.P. Rule 8(c)(1), "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Defendants' initial Answer in this action, filed on June 7, 2017 at Docket number 11 (Murphy Dec. Ex. P), contained thirty separate affirmative defenses, none of which mentions the Section 207(k) partial exemption. The very first time the Section 207(k) exemption was raised in this case was in a purported "Amended Answer to the Consolidated Complaint" filed on November

5, 2021, at Docket Number 303 (Murphy Dec. Ex. R) in the consolidated action, *Arciello v. County of Nassau*, Case No. 16-cv-3974(JMA)(SIL), which contained a Thirty Eighth Affirmative Defense that stated "Those Plaintiffs who were Nassau County employees 'engaged in fire protection and law enforcement activities,' are exempt from the maximum hours standards of the FLSA, 29 U.S.C. 207(a), pursuant to the FLSA, 29 U.S.C. § 207(k) and 29 C.F.R. § 553.230."

Pursuant to F.R.C.P. Rule 15(a)(1), amendments to pleadings as of right may be made as a matter of course no later than 21 days after initially serving the pleading. The purported amended Answer filed on November 5, 2021, was filed more than four years after Defendants' initial Answer was filed. Pursuant to F.R.C.P. Rule 15(a)(2), "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Defendants neither obtained Plaintiffs' written consent to file an amended answer, nor sought, much less obtained, the Court's leave to file one. Indeed, the only prior Order of the Court addressing an amended Answer specifically stated that none need be filed. *See* Memorandum Decision and Order consolidating the *Burns* and *Arciello* actions, entered by the Hon. Judge Arthur D. Spatt on October 9, 2018, at Docket No. 69, stating "the Defendants, having answered the Complaints in the First Filed Action and the Second Filed Action, will be under no obligation to file additional answers to the Consolidated Complaint." Nevertheless, more three years later without seeking leave of either Plaintiffs or the Court, Defendants filed what purported to be an Amended Answer, which for the first time raised the affirmative defense of the partial exemption of 29 U.S.C. § 207(k).

An amended pleading which cannot be filed as of right under Rule 15(a)(1) and for which leave is not sought pursuant to Rule 15(a)(2) is "improperly served and therefore a nullity." Swan v. Board of Higher Education, 319 F.2d 56, 60 (2nd Cir. 1963). Once the time to file an amended pleading as of right expires, a party "could readily have moved for leave to amend his complaint,

which Rule 15(a) provides 'shall be freely given when justice so requires.' Having elected not to take the simple step of making such a motion, [that party] cannot now avoid the requirements of Rule 15(a)." *Id* at. 61. *See generally* National Union of Hospital & Health Care Employees v. Carey, 557 F.2d 278, 282 (2nd Cir. 1977) (leave to amend should not be given where "no request for such relief was made to the District Court"); Kernan v. New York State Dept. of Fin. Servs., 2015 U.S.Dist.LEXIS 175777*8 fn.8, Index No. 13-cv-3195 (JS)(ARL) (E.D.N.Y. July 15, 2015) (treating an amended pleading filed without seeking leave of the Court to amend as a nullity); Shah v. Consol. Edison Corp., 2006 U.S.Dist.LEXIS 79327*5, 2006 WL 3155786, Index No. 05-cv-2868 (JSR)(KNF) (Oct. 26, 2006) ("A plaintiff whose right to amend the complaint once as a matter of course terminated must seek leave to amend from the court").

Since Defendants did not raise the Section 207(k) exemption in their initial answer, and since their purported "amended answer" was a nullity due to their failure to comply with the provisions of either FRCP Rule 15(a)(1) or (a)(2), and since it is an affirmative defense which they were required to have raised in their Answer pursuant to Rule 8(c)(1), Defendants are now barred from arguing that Plaintiffs should be subject to the partial exemption of Section 207(k).

**B. In the Event Defendants Are Permitted to Argue the Section 207(k) Exemption, The Exemption Should Not Apply**

"Section 207(k) provides a partial exemption to the overtime requirements of Section 207(a). In creating the exemption, 'Congress recognized that certain jobs are not easily susceptible to the workweek method of wage and time calculations, and therefore provided special calculation methods for some trades, including fire protection and law enforcement." Pilot v. City of Yonkers, 2021 U.S.Dist.LEXIS 184944*10-11, 2021 WL 4429839, Index No. 19-cv-8169 (VB) (Sep. 27, 2021). The Second Circuit, which has only cited to the provision twice, has provided no guidance with respect to the interpretation of Section 207(k) which could impact any potential issues in this

case. *See* Reich v. New York, 3 F.3d 581, 590 (2nd Cir. 1993) (the existence of the 207(k) exemption expresses "Congress's intent to apply the FLSA to state law enforcement agencies"); Vandermark v. City of New York, 391 Fed.Appx. 957, 959 (2nd Cir. 2010) ("Environmental Police Officers" performed the job duties called for under the Section 207(k) exemption).

The regulations surrounding the Section 207(k) exemption are far from a model of clarity. If the Section 207(k) exemption applies, then overtime payments need not be made for workers working a 28 day "work period" until they have worked at least "212 hours for fire protection employees and 171 hours for law enforcement employees. In the case of such employees who have a work period of at least 7 but less than 28 consecutive days, overtime compensation is required when the ratio of the number of hours worked to the number of days in the work period exceeds the ratio of 212 (or 171) hours to 28 days." 29 C.F.R. § 553.201. According to 29 C.F.R. § 553.224:

> (a) As used in section 7(k), the term 'work period' refers to any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days. Except for this limitation, the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day. Once the beginning and ending time of an employee's work period is established, however, it remains fixed regardless of how many hours are worked within the period. The beginning and ending of the work period may be changed, provided that the change is intended to be permanent and is not designed to evade the overtime compensation requirements of the Act.
>
> (b) An employer may have one work period applicable to all employees, or different work periods for different employees or groups of employees.

Defendants have not formally stated a position in any document filed with the Court in the course of this litigation as to what the "work period" for all employees or for any individual employees might be. During a previous investigation by the US Department of Labor in 2015 as to whether the County was improperly calculating overtime rates of pay for Corrections Officers by not including certain bonus payments in their "regular rate" of pay, the County claimed that certain workers worked a 7 day schedule and certain workers worked a 15 day schedule for the

purpose of the Section 207(k) exemption, but at no point have Defendants formally stated a position in this litigation as to what "work period" any individual Plaintiff or all Plaintiffs collectively were subject to. *See* 29 C.F.R. § 553.224(a): "the work period can be of any length, and it need not coincide with the duty cycle or pay period or with a particular day of the week or hour of the day." *See* Plaintiffs' Rule 56.1 Statement, Paragraph 11.

In this action, Plaintiffs were paid on a 14 day cycle for both regular time and overtime. Defendants claimed in a Department of Labor investigation regarding claims unrelated to the claims asserted in this case that these workers were working either 7 day schedules or 15 day schedules. However, none of these time periods constitutes a "work period" as defined under the Section 207(k) exemption or under the implementing regulations, 29 C.F.R. § 553.224(a).

It is undisputed that the County of Nassau n*ever* calculated overtime pay, or actually paid overtime pay, based on any cycle of days or schedule of hours which related to a 28 day work period of 171 hours, or any fraction thereof. Defendants also failed to comply with the requisite record-keeping requirements for employees subject to the Section 207(k) exemption. *See* 29 C.F.R. § 553.51: "For each employee subject to the partial overtime exemption in section 7(k) of the Act, a public agency which is a State, a political subdivision of a State, or an interstate governmental agency shall maintain and preserve records containing the information and data required by § 553.50 and, in addition, make some notation on the payroll records which shows the work period for each employee and which indicates the length of that period and its starting time. If all the workers (or groups of workers) have a work period of the same length beginning at the same time on the same day, a single notation of the time of day and beginning day of the work period will suffice for these workers." 29 C.F.R. § 553.50, related to employees subject to the compensatory time provisions of 29 U.S.C. § 207(o), requires that employers maintain and preserve "(a) The

number of compensatory time earned pursuant to section 7(o) each workweek, or other applicable work period, by each employee at the rate of one and one-half hour for each overtime hour worked; (b) The number of hours of such compensatory time used each workweek, or other applicable work period, by each employee; (c) The number of hours of compensatory time compensated in cash, the total amount paid and the date of such payment; and (d) Any collective bargaining agreement or written understand or agreement with respect to earning and using compensatory time off. If such agreement or understanding is not in writing, a record of its existence must be kept." 29 C.F.R. § 553.50 further expressly incorporates the record-keeping requirements of 29 C.F.R. § 516.2, which include "(5) Time of day and week on which the employee's workweek begins (or for employees employed under section 7(k) of the Act, the starting time and length of each employee's work period)…. (6) (i) Regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the Act, (ii) explain basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis, and (iii) the amount and nature of each payment which, pursuant to section 7(e) of the Act, is excluded from the "regular rate" (these records may be in the form of vouchers or other payment data), (7) Hours worked each workday and total hours worked each workweek (for purposes of this section, a 'workday' is any fixed period of 24 consecutive hours and a 'workweek' is any fixed and regularly recurring period of 7 consecutive workdays), (8) Total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation, (9) Total premium pay for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under paragraph (a)(8) of this section." Defendants produced no such records containing all of this information in the course of discovery in this action.

While the Second Circuit has not opined on the subject, District Courts and other Circuit Courts have split on the issue of whether the Section 207(k) exemption is available to employers who do not formally adopt a specific Section 207(k) work period and pay workers overtime in accordance with the hourly limitations set forth under that provision. *See* Vance v. Vill. Highland Hills, 2020 U.S. Dist.LEXIS 239386*5-5, 2020 WL 7490100, Index No. 20-cv-00152 (N.D.Ohio Dec. 21, 2020) ("the key issue is whether Defendant actually established or implemented a 28-day overtime period… A Department of Labor opinion letter said: 'An employer must designate or otherwise objectively establish the work period for each employee (or group of employees) for whom §7(k) is claimed and pay the affected employees in accordance with its provisions. As indicated in 29 C.F.R. §§ 553.50-.51, the employer is required to maintain and preserve records which, among other information, show the work period for each employee and which indicate the length of that period and its starting time… We consider [Martin v. Coventry Fire Dist., 981 F.2d 1358, 1359-60 (1st Cir. 1992)] to be incorrectly decided.' While neither *Coventry* nor the Department of Labor's letter is binding, the Department of Labor opinion letter is more persuasive. There is no indication that the fire department ever actually followed the employee manual policy with respect to Plaintiff… The 29 U.S.C. § 207(k) exception does not apply", *aff'd* 2021 U.S.App.LEXIS 32156*5, 2021 FED App. 0485N (6th Cir. 2021) ("The Village 'bears the burden of proving it adopted a work period that brings it within the rule of § 207(k)'… the district court found that the Village did not meet this burden… This conclusion is well-supported by the record, and it was not erroneous"); Holmes v. Washington, 1992 U.S.Dist.LEXIS 22550*2-3, 30 Wage & Hour Cas. (BNA) 1630, Index No. C90-5366B (W.D.Washington Mar. 13, 1992) ("Department of Labor regulations require employers under § 207(k) to 'make some notation on the payroll records which show the work period for each employee and which indicates the length of that period and

its starting time.' 29 C.F.R. § 553.51. Here, defendants admit that 'no notation has been made on defendants' payroll record reflecting the work period, its length, or its starting time.'… defendants stipulate that 'at some shift changes, plaintiffs worked more than forty hours in seven days without receiving time and one-half compensation.' [internal record citation]. Defendants do not counter this evidence with the required records and, therefore, cannot rely on § 207(k). Plaintiffs' Motion for Summary Judgment should be granted"); *but see* Foley v. City of Buffalo, 2011 U.S.Dist.LEXIS 82285*12, 2011 WL 3176455, Index No. 06-cv-49S (W.D.N.Y. July 27, 2011) ("an employer need not 'affirmatively adopt' the § 207(k) exemption for it to apply").

It is respectfully submitted that Defendants' failure to raise the Section 207(k) exemption in its Answer; its failure to seek leave to file an amended Answer raising the Section 207(k) exemption; its failure to comply with the record-keeping provisions of 29 U.S.C. § 553.51; and its failure to ever actually implement a Section 207(k) pay period or pay workers in accordance with such pay period's hourly requirements bars Defendants from asserting the applicability of the Section 207(k) exemption in this action.

**POINT III:**

**DAMAGE CALCULATIONS**

Due to the voluminous nature of the records in this case, the parties agreed to exchange a representative sample of the time and payroll records at issue, constituting records of 64 of the 640 collective plaintiffs, or 10% of the total, for a period of 52 total weeks spread across the statute of limitations period, consisting of 16 weeks in 2004 (September 4 through December 25); 18 weeks in 2017 (January 5 through May 11); and 18 weeks in 2020 (May 7 through September 10). Plaintiffs produced damage calculations based on this data, in a manner permitted by the Fair Labor Standards Act and the courts interpreting same.

Plaintiffs were paid on a 14-day schedule, set forth by Defendants, with separate checks issued for straight time and overtime. Defendants did not produce records showing which overtime payments were paid pursuant to the Collective Bargaining Agreements and which were paid pursuant to the Fair Labor Standards Act. Defendants did not maintain or produce records showing when the supposed Section 207(k) work period began or ended for each, or all, employees. Defendants did not maintain or produce the records required under 29 U.S.C. § 553.51. Defendants did not maintain or produce records establishing how their payments were made in accordance with the Fair Labor Standards Act's timely payment requirements. Other than the naked assertion of entitlement to a Section 207(k) exemption contained in the nullity of their purported Amended Answer, Defendants have not provided any information at all about which payments they believe to entitle them to offsets against liability which might otherwise reduce the damages they owe. Notably, and perhaps most importantly, throughout the course of this litigation, Defendants have not provided Plaintiffs with *any calculations at all* establishing or attempting to establish how their payments complied with the Fair Labor Standards Act. As such, Plaintiffs are left to do the best they can with what they have.

In Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-688 (1946), the Supreme Court held that, in FLSA cases, "When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records. But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, a more difficult problem arises. The solution, however, is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of

an employee's labors without paying due compensation as contemplated by the Fair Labor Standards Act. In such a situation we hold that an employee has carried out his burden if proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." In Tyson Foods Inc. v. Bouaphakeo, 577 U.S. 442, 455-456 (2016), the Supreme Court was presented with the opportunity to revisit its holding in Mt. Clemens Pottery and declined to do so. "In many cases, a representative sample is 'the only practicable means to collect and present relevant data' establishing a defendant's liability. In a case where representative evidence is relevant in proving a plaintiff's individual claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class. To so hold would ignore the Rules Enabling Act's pellucid instruction that the use of the class device cannot abridge any substantive right… The Court in Mt. Clemens held that when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the remedial nature of the FLSA and the great public policy which it embodies militate against making the burden of proving uncompensated work an impossible hurdle for the employee." (internal citations and punctuation omitted).

Here, Defendants produced records that appeared to be designed around their collective bargaining agreement, rather than around their FLSA obligations. The hand-written time sheets produced by Defendants (Murphy Dec. Exs. M, N) do not reflect the hours worked each workday

or total hours worked each workweek as required under 29 C.F.R. § 516.2(a)(7). No record was produced which reflected any hourly rate of pay for any workweek in which overtime compensation was due in accordance with 29 C.F.R. § 516.2(a)(6)(i). No record was produced which explained the basis of pay in accordance with 29 C.F.R. § 516.2(a)(6)(ii). No record was produced which explained the starting time and length of each employee's "work period" in accordance with 29 C.F.R. § 516.2(a)(5) and 29 C.F.R. § 553.51. In the absence of such records, Plaintiffs have provided "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Mt. Clemens Pottery, 328 U.S. at 688. *See also* Perry v. City of New York, 78 F.4th 502, 526 (2nd Cir. 2023) ("the law of damages does not require the impossible. When a plaintiff has demonstrated the *existence* of harm, but the situation is 'of such a nature as to preclude the ascertainment of the *amount* of damages with certainty,' then 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts… This principle is familiar to FLSA litigation… Since the defendant produced the damage, it must bear the uncertainty of the proof") (internal citations and punctuation omitted).

"In meeting the burden under *Mt. Clemens*, the [Plaintiff] need not present testimony from each underpaid employee; rather, it is well-established that the [Plaintiff] may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA. The [Plaintiff]'s burden in such cases, while not overly onerous, is to establish a prima facie case. He is not required to do so in complete detail as to the wages lost by each employee. However, he must produce sufficient evidence to establish that the employees have in fact performed work for which they were improperly compensated and produce sufficient evidence to show the amount and extent of that work 'as a matter of just and reasonable inference.' Upon

meeting this burden, the burden shifts to the employer, and if the employer fails to produce evidence of the 'precise amount of work performed' or evidence to 'negative the reasonableness of the inference to be drawn from the employee's evidence,' the court may then 'award damages to the employees, even though the result be only approximate.'" Reich v. Southern New England Telecomms. Corp., 121 F.3d 58, 67 (2nd Cir. 1997). "[D]epending on the nature of the facts to be proved, a very small sample of representational evidence can suffice. *Cf Mt. Clemens*, 328 U.S. at 690-91, 692-93 (testimony of 8 of approximately 300 employees, or 2.7% of group, sufficient to establish entitlement to recovery under the FLSA). Our focus is not on the numbers in isolation but on whether the district court could reasonably conclude that there was 'sufficient evidence to show the amount and extent of… [uncompensated] work as a matter of just and reasonable inference.'" Reich v. Southern New England Telecomms. Corp., *supra*, 121 F.3d at 68. A "'representative sample' of employees can provide a foundation for assumptions about the overall employee pool." Harold Levinson Assocs. v. Chao, 37 Fed. Appx. 19, 21 (2nd Cir. 2002). *See generally* Micone v. Sarene Servs., Inc., 2025 U.S.Dist.LEXIS 42088*70-71, 2025 WL 736638, Index No. 20-cv-3273 (NJC) (ST) (E.D.N.Y. Mar. 8, 2025) (Upholding analysis of records of 49 patients to establish FLSA damages for 506 Plaintiffs who worked as home health aides by noting that "Representative evidence can include a sample of employee testimony as well as samples of other relevant evidence, such as time and pay records. In *Tyson*, for example, plaintiffs presented an expert's study to prove the hours employees worked. The Supreme Court found that, '[r]ather than absolving the employees from proving individual injury, the representative evidence,' i.e. the expert's sampling study, 'was a permissible means of making that very showing'") (internal citations omitted); Mangahas v. Eight Oranges, Inc., 754 F.Supp.3d 468, 484 (S.D.N.Y. Oct. 22, 2024) ("A court can also conclude that an entire class of employee plaintiffs have suffered a

classwide violation 'based on the testimony of a representative sample' of class members"); Su v. CareCo Shoreline, Inc., 2023 U.S.Dist.LEXIS 56143*20-21, 2023 WL 2743132, Index No. 21-cv-00401 (D.Conn. Mar. 31, 2023) ("it is well-established that plaintiff may present the testimony of a representative sample of employees as part of his proof of the prima facie case under the FLSA").

Here, the sample used (64 workers) is more than 10% of the total of 582 opt-in Plaintiffs, greater than the number normally required of Courts in FLSA cases. *See generally* Reich v. Southern New England Telecomms. Corp., 121 F.3d 58, 66 (2nd Cir. 1997) (affirming judgment based on representative sample of 2.5% of the collective); Donovan v. Burger King Corp., 672 F.2d 221, 224-25 (1st Cir. 1982) (testimony from 6 workers and stipulations from 20 others sufficient to support backpay award to 246 employees). This 10% sampling was agreed to – indeed, was proposed by - Defendants (Murphy Dec. Ex. H). And the sample of payroll weeks provided – 52 weeks spread across three separate years – was what was proposed by Defendants, so they can hardly be heard to complain that the sample they themselves agreed to provide is insufficient to extrapolate across the statute of limitations period. (Murphy Dec. Ex. I).

Plaintiffs have calculated a full amount of liquidated damages equal to the amount of late payments of overtime wages. This is entirely appropriate. "Courts may decline to award liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective good faith with objectively reasonable grounds for believing that its acts or omissions did not violate the FLSA. However, the burden on the employer in showing good faith is heavy, and double damages are the norm, single damages the exception." Keawsri v. Ramen-Ya Inc., 2021 U.S.Dist.LEXIS 150399*69, 2021 WL 3540671, Index No. 17-cv-2406 (LJL) (S.D.N.Y. Aug. 10, 2021); *see also* McFarlane v. Harry's Nurses Registry, 2020 U.S.Dist.LEXIS 58387*35, 2020 WL 1643781, 17-cv-06350 (PKC) (PK) (E.D.N.Y. Apr. 2, 2020) ("The Second Circuit has

characterized the employer's burden as a difficult one, emphasizing that double damages are the norm and single damages the exception"); Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 150 (2nd Cir. 2008) ("To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA and then act to comply with them'"). Here, Defendant took *no* steps to ensure it was in compliance with the timely-payment provisions of the FLSA. Defendants obtained an opinion letter from the Department of Labor finding that the *amount of wages it paid* was sufficient, subject to certain offsets, to overcome its unlawful undercalculation of certain overtime rates; it took *no steps* to ensure that it was in compliance with the timely payment provisions of the FLSA. During Sheriff Sposato's tenure in office, Plaintiffs, union representatives, and payroll officials like Louis Buonomo often complained about consistently late overtime payments. Sheriff Sposato responded by further delaying timely payments while by insisting that overtime slips "must be completed and signed by several individuals prior to submission for payment. Overtime slips must be accurately, fully and properly completed in order for payment of County monies to be authorized… There have been several Sheriff's Orders and other directives issued over the years on this topic, but unfortunately deficient overtime slips continue to be submitted by your members." Murphy Dec. Ex. B. The law is clear that failure to get a signature on an overtime approval slip, or otherwise improperly filling out a timely-submitted slip, is *not* a basis for delaying payment of wages for overtime worked. As the Second Circuit has repeatedly held: "This definition of 'employment,' [contained in 29 C.F.R. § 785.11] in tandem with § 207's mandate, produces the rule: an employer must pay overtime wages for work it (a) requires, (b) knows about, or (c) should have known about through the exercise of reasonable diligence…. we have long recognized that an employee's failure to report work the employer in fact knew about or required does not protect the employer from

FLSA liability." Perry v. City of New York, 78 F.4th.502, 513 (2nd Cir. 2023). *See generally* Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 945 (2nd Cir. 1959) (employer required to pay for time employee did not record on time sheet but complained to employer about not being paid for). The failure of an overtime slip to contain the proper supervisory signature – let alone the need to review sleeps for the *potential* failure of any of them to contain the proper supervisory signature – is simply not a valid basis in law for delaying overtime payments. In sum, pursuant to 298 C.F.R. § 785.11, "Work not requested but suffered or permitted is work time. For example, an employee may voluntarily continue to work at the end of the shift…. The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time."

For similar reasons, the County's overtime violations were willful, entitling Plaintiffs to a three year statute of limitations rather than a two year statute of limitations. "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." Kuebel v. Black & Decker, Inc., 643 F.3d 352, 366 (2nd Cir. 2011). "An employer can evince reckless disregard for the unlawfulness of its conduct even when it 'may not have had actual knowledge of the violative practices." Perry v. City of New York, 78 F.4th 502, 520 (2nd Cir. 2023). Here, there is longstanding evidence, stretching back for years, that Plaintiffs complained about their overtime being paid late; that Defendants knew the overtime was being paid late; and that Defendants made a volitional decision to continue paying the overtime late. Plaintiffs' Rule 56.1 Statement, ¶ 10. If Defendants did not have actual knowledge that paying overtime untimely was a violation of the FLSA, it clearly went out of its way to avoid obtaining such knowledge, in order to keep up the practice of failing to timely pay overtime.

Paragraphs 24 through 32 of the accompanying Murphy Declaration set forth the methodology, and attach the documents, used to calculate Plaintiffs' total damage calculation of $32,566,303.44.

## CONCLUSION

For the reasons set forth above, Plaintiffs' motion for Summary Judgment should be granted; Plaintiffs should be awarded Judgment against Defendants in the amount of $32,566,303.44, and the Court should grant whatever other and further relief it deems appropriate.

Dated: New York, New York
February 17, 2026

By: ________/s/_______________

James E. Murphy, Esq.
Lloyd R. Ambinder, Esq.
VIRGINIA & AMBINDER, LLP
40 Broad St., 7th Floor
New York, New York 10004
(212) 943-9080
jmurphy@vandallp.com

*Attorneys for Plaintiffs*