**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK** **Docket No. 17-cv-2721 (JMA)(SIL)**

-----------------------------------------------------------------X

**SHAWN BURNS, KEVIN BIEN, and**
**BRIAN M. WISE, and all other similarly situated**
**Correction Officers,**

**Plaintiffs,**

**-against-**

**COUNTY OF NASSAU and EDWARD MANGANO,**
**in his Official Capacity,**

**Defendants.**

-----------------------------------------------------------------X

# MEMORANDUM OF LAW IN RESPONSE AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Rhoda Y. Andors, Esq.
**Bee Ready Law Group, LLP**
*Attorneys for Defendants*
170 Old Country Road, Suite 200
Mineola, New York 11501
(516) 746-5599
randors@beereadylaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

RESPONSES TO THE PLAINTIFFS' RULE 56.1 STATEMENT ........ *filed separately*

ARGUMENT ........ 1

I. THE ESSENTIAL LEGAL AND FACTUAL ISSUES, AND THE LEGAL AUTHORITY AND INDISPUTABLE EVIDENCE THAT SHOW THE COUNTY'S PAYMENT OF OVERTIME WAS TIMELY UNDER THE FLSA ........ 1

II. (A) ON THE RECORD, THIS COURT GRANTED LEAVE FOR THE COUNTY TO PLEAD THE FLSA §207(k) EXEMPTION IN AN AMENDED ANSWER; THE COUNTY DID SO; BUT THE PLAINTIFFS NOW ALLEGE THAT THE COUNTY FAILED TO RAISE THE EXEMPTION ........ 10

II. (B) THE FLSA'S §207(k) EXEMPTION AND §207(H) CREDITS ARE APPLICABLE TO REDUCE THE PLAINTIFFS' ALLEGED LIQUIDATED DAMAGES, BUT THE PLAINTIFFS FAIL TO DO SO ........ 14

III. THE PLAINTIFFS' SPURIOUS ALLEGATIONS HAVE NO FACTUAL OR LEGAL BASIS, AND THEIR ALLEGED LIQUIDATED DAMAGES ARE GROSSLY OVERSTATED ........ 21

IV. THE PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES BECAUSE THE COUNTY ACTED IN GOOD FAITH COMPLIANCE WITH THE FLSA ........ 25

V. THE STATUTE OF LIMITATIONS SHOULD BE RESTRICTED TO TWO YEARS BECAUSE THERE HAS BEEN NO WILLFUL VIOLATION OF THE FLSA ........ 27

VI. THE COUNTY OBJECTS TO EACH AND EVERY PURPORTED "FACTUAL" STATEMENT IN THE PLAINTIFFS' MEMORANDUM OF LAW THAT LACKS ANY CITATION TO EVIDENCE ........ 28

VII. EDWARD MANGANO, IN HIS OFFICIAL CAPACITY AS COUNTY EXECUTIVE, SHOULD BE DISMISSED FROM THIS ACTION ....................................................................29

CONCLUSION....................................................................................................29

CERTIFCATE OF WORD COUNT

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Arciello, et al. v. County of Nassau*,
No. 16-CV-3974 (E.D.N.Y. July 18, 2016) ..... 12

*Banschback, et al. v. County of Nassau*,
No. 1-CV-6981 (E.D.N.Y. May 25, 2004) ..... 26

*Beardsley v. County of Saratoga*,
No. 23-CV-1641, 2026 WL 265997 (N.D.N.Y. Feb. 2, 2026) ..... 3

*Bohack Corp. v. Iowa Beef Processors, Inc.*,
715 F.2d 703 (2d Cir. 1983) ..... 9

*Conzo v. City of New York,*
667 F. Supp. 2d 279 (S.D.N.Y. 2009) ..... 1, 2

*DiStiso v. Cook*,
691 F.3d 226 (2d Cir. 2012) ..... 28

*Edwards v. City of New York*,
No. 08-CV-3134, 2011 WL 3837130 (S.D.N.Y. Aug. 29, 2011) ..... 2

*Feaser v. City of New York,*
No. 93-CV-5739 (LAP), 1995 WL 350848 (S.D.N.Y. June 9, 1995) ..... 14-16

*Fishman v. Cnty. of Nassau,*
No. 10-CV-3231, 2011 WL 3919713 (E.D.N.Y. Sept. 7, 2011) ..... 29

*Foley v. City of Buffalo*,
No. 06-CV-49S, 2011 WL 3176455 (W.D.N.Y. July 27, 2011) ..... 16, 18

*Garcia v. Saigon Mkt. LLC,*
No. 15-CV-9433, 2019 WL 4640260 (S.D.N.Y. Sept. 24, 2019) ..... 25

*Holmes v. Washington*,
No. C90-5366B, 1992 WL 247444 (W.D. Wash. Mar. 13, 1992) ..... 19

*In re MarketXT Holdings Corp.*,
336 B.R. 39 (Bankr. S.D.N.Y. 2006) ..... 13

*Ladner v. City of New York,*
20 F. Supp. 2d 509 (E.D.N.Y. 1998), *aff'd,* 181 F.3d 83 (2d Cir. 1999) .................................. 9

*Lynch v. City of New York*,
291 F. Supp. 3d 537 (S.D.N.Y. 2018) .................................................................................. 2, 24

*Mandal v. City of New York,*
No. 02-CV-1234, 2006 WL 3405005 (S.D.N.Y. 26, 2006)...................................................... 9

*McAllister v. New York City Police Dep't*,
49 F. Supp. 2d 688, n.12 (S.D.N.Y. 1999)............................................................................... 9

*Mills v. State of Maine,*
853 F. Supp. 551 (D. Me. 1994) .............................................................................................. 16

*Murray v. City of New York, New York*, *superseded on other grounds*,
No. 16-CV-8072, 2020 WL 615053 (S.D.N.Y. Feb. 10, 2020)................................................ 2

*Nell v. City of New York*,
No. 19-CV-6702, 2021 WL 2716523 (S.D.N.Y. July 1, 2021) .......................................... 2, 24

*O'Brien v. Town of Agawam*,
350 F.3d 279 (1st Cir. 2003)..................................................................................................... 21

*Parker v. City of New York*,
No. 04-CV-4476, 2008 WL 2066443 (S.D.N.Y. May 13, 2008) ............................................. 2

*Pilot v. City of Yonkers,*
No. 19-CV-8169, 2021 WL 4429839 (S.D.N.Y. Sept. 27, 2021)............................... 14, 15, 17

*Pineda-Herrera v. Da-Ar-Da, Inc.,*
No. 09-CV-5140, 2011 WL 2133825 (E.D.N.Y. May 26, 2011) ........................................... 25

*Reich v. S. New England Telecommunications Corp.,*
892 F. Supp. 389 (D. Conn. 1995), *aff'd*, 121 F.3d 58 (2d Cir. 1997).................................... 20

*Rogers v. City of Troy, N.Y.,*
148 F.3d 52 (2d Cir. 1998)......................................................................................................... 3

*Schwind v. EW & Assocs., Inc.,*
357 F. Supp. 2d 691 (S.D.N.Y. 2005) ...................................................................................... 12

*Scott v. City of New York*,
592 F. Supp. 2d 475 (S.D.N.Y. 2008) ........ 20

*Worley v. City of New York*,
17-CV-4337, 2020 WL 730326 (S.D.N.Y. 2020)........ 2, 27

**Statutes**

29 U.S.C. §201, *et seq.*........ *passim*

29 U.S.C. §207(a) ........ 14

29 U.S.C. §207(e) ........ 19, 23

29 U.S.C. §207(h) ........ 14, 19

29 U.S.C. §207(k) ........ *passim*

29 U.S.C. §216(b) ........ 1, 10, 25

29 U.S.C. §255(a) ........ 27

29 U.S.C. §260........ 25

29 U.S.C. §778.106........ *passim*

29 U.S.C. §778.200-202 ........ 20

29 U.S.C. §778.218........ 24

29 C.F.R. §516.2........ 22, 26

29 C.F.R. §553.201 ........ 15, 16, 18

29 C.F.R. §553.223 ........ 20

29 C.F.R. §553.224 ........ 17, 18

29 C.F.R. §553.230 ........ 15

29 C.F.R. §553.551 ........ 22, 26

Federal Rule of Civil Procedure 15 ........ 12

Federal Rule of Civil Procedure 56 ........................................................................ *passim*

Federal Rule of Evidence 403 ........................................................................................ 9

Federal Rule of Evidence 802 ........................................................................................ 9

Joint Local Rules, S.D.N.Y. and E.D.N.Y. (effective January 2, 2026), Rule 6.2 ...................... 13

## PRELIMINARY STATEMENT

The Defendants, the County of Nassau and Edward Mangano, in his official capacity as Nassau County Executive (collectively "the County"), respectfully submit this memorandum of law in response and opposition to the Plaintiffs' summary judgment motion, pursuant to Federal Rule of Civil Procedure ("FRCP") 56. The Plaintiffs allege that the County violated the Fair Labor Standards Act, 29 U.S.C. §201, *et seq*. ("the FLSA"), by untimely payment of their overtime wages. They seek liquidated damages, pursuant to the FLSA §216(b).

However, as set forth below, the record evidence shows that the County's payment of overtime was timely under the FLSA, pursuant to case law in the Second Circuit and 29 U.S.C. § 778.106. Thus, as the County has complied with the FLSA, the Plaintiffs are not entitled to liquidated damages, the County is entitled to summary judgment in its favor, and this Court must deny the Plaintiffs' summary judgment motion and dismiss this action.

## ARGUMENT

### I. THE ESSENTIAL LEGAL AND FACTUAL ISSUES, AND THE LEGAL AUTHORITY AND INDISPUTABLE EVIDENCE THAT SHOW THE COUNTY'S PAYMENT OF OVERTIME WAS TIMELY UNDER THE FLSA

There are essentially two issues in this action, one legal and one factual: 1) What constitutes prompt payment of overtime, pursuant to the FLSA? and 2) Was the County's payment of the Plaintiffs' overtime timely, pursuant to the FLSA?

1) The law on the legal question is well settled: courts in the Second Circuit have adopted a prompt payment interpretation of the FLSA, based on 29 C.F.R. §778.106. (*See Conzo v. City of New York,* 667 F. Supp. 2d 279, 288 (S.D.N.Y. 2009)("courts, including the Second Circuit, have long interpreted the statute to include a prompt payment requirement…because the statute does not explicitly address the prompt payment requirement...it is, therefore, appropriate to consider the views of the administrative agency charged with the law's enforcement."). 29 C.F.R. §778.106 sets

forth a general rule and an exception. The general rule applies when overtime pay can be determined by "the regular payday for the period in which such [overtime] work week ends," which was impossible here. (*Id.*, **Ex. BB**, **Def. SOMF** ¶¶63, 99). The exception, which applies here, states that overtime will be timely when overtime "cannot be determined until some time after the regular pay period," if payment is as "as soon after the regular pay period as is practicable" and delayed no longer than "reasonably necessary for the employer to compute and arrange for payment." 29 C.F.R. §778.106. (Ex. BB, Def. SOMF ¶¶57, 61-62).

Thus, where the exception applies, as it does here, there is no *per se*, absolute rule that overtime must be paid by a predetermined deadline, and courts in the Second Circuit have considered 21 days to 35 days or longer as timely payment under the FLSA. *See Nell v. City of New York*, No. 19-CV-6702, 2021 WL 2716523, at *8 (S.D.N.Y. July 1, 2021)("there is no required deadline by which to make payments, so long as payment is made as soon as 'practicable.'"); *Murray v. City of New York, New York*, *superseded on other grounds*, No. 16-CV-8072, 2020 WL 615053, at *14, (S.D.N.Y. Feb. 10, 2020)(no *per se* rule that 35 days is untimely); *Worley v. City of New York*, 17-CV-4337, 2020 WL 730326 (S.D.N.Y. 2020)(plaintiffs denied summary judgment for claim that payment later than 35 days was untimely); *Lynch v. City of New York*, 291 F. Supp. 3d 537, 552 (S.D.N.Y. 2018)(generally two pay periods or 28 days is timely); *Edwards v. City of New York*, No. 08-CV-3134, 2011 WL 3837130, at *1-*2 (S.D.N.Y. Aug. 29, 2011)(two bi-weekly pay periods was timely, where overtime worked in anticipatory week had to be calculated in next pay period);); *Conzo v. City of New York,* 667 F. Supp. 2d 279, 288 (S.D.N.Y. 2009)(two bi-weekly pay periods were timely for the majority of overtime payments); *Parker v. City of New York*, No. 04-CV-4476, 2008 WL 2066443, at *1, *10 (S.D.N.Y. May 13, 2008)(21 days was timely where overtime pay could not be calculated before second bi-weekly pay period);

*Rogers v. City of Troy, N.Y.,* 148 F.3d 52, 60 (2d Cir, 1998)(bi-weekly pay period with one week pay lag could be timely if four factors were satisfied).

However, the Plaintiffs' answer to the legal question above is that an absolute deadline, 20 days (one bi-weekly pay period of 14 days plus 6 days), was the deadline for timely payment of their overtime. (Pl. Mem Law 1, ¶2; 2, ¶2; 9, ¶2). Yet the Plaintiffs' memorandum of law does not cite a single case holding that 20 days is the time limit to pay overtime under the FLSA. The Plaintiffs do cite an inapposite Northern District of New York case, *Beardsley v. County of Saratoga*, which held that "the representative plaintiffs have been paid overtime more than two weeks after it was *worked*," which was untimely. (emphasis added). No. 23-CV-1641, 2026 WL 265997, at *10 (N.D.N.Y. Feb. 2, 2026). (Pl. Mem. Law 6, ¶2). Yet pursuant to *Beardsley*, the Plaintiffs' own alleged 20-day overtime payment deadline fails, because 20 days after the overtime was worked exceeds the two week deadline in *Beardsley.* The Plaintiffs similarly cite, in passing, the general rule in 29 C.F.R. §778.106, which applies when overtime can be calculated by the end of the overtime work week, which is inapplicable here. (Pl. Mem. Law, 8, ¶3). Both the president of the Plaintiffs' own union, Brian Sullivan, who is a Correction Officer, a Sergeant, and a Plaintiff in this action, and Susan Hembach ("Hembach"), who processed the Plaintiffs' overtime payroll in the Human Resources Unit of the Sheriff's Department ("the Department") for 17 years, between 2002 and 2019, testified in their depositions that it was *impossible* for the County to pay overtime compensation within the same biweekly pay period within which it was worked. (Ex. BB, SOMF ¶¶53-55, 63, 82, 85, 99).

2) Here, the answer to the factual question above is that between 2014 and 2020, most of the Plaintiffs' FLSA overtime payments (89.3%) were paid within 15 to 28 days (or within two biweekly pay periods) of the dates overtime was worked, which is well within the range of timely

pay periods in the cases in the Second Circuit cited above, and as soon as practicable, due to the practical necessities of the County's payroll process, as explained below. (*See* Chart page 23). (Ex. BB, Def. SOMF ¶¶53-69, 71-76, 93-99, 103, 117-118, 146-148). Nearly all of the other overtime payments (9.9%) were paid within the next pay period, which was no longer than reasonably necessary, and due to the Plaintiffs' own actions in withholding their handwritten overtime slips (the form of recording overtime they insisted on)[1] and their many errors in filling out their overtime slips, requiring additional time for correction. (*Id*.; **Ex. AA**; Aff. Boniface, ¶20). Between 2020 and the present, the Comptroller's implementation of the PeopleSoft payroll system has reduced the minimum time to payment, so that a Plaintiff who works overtime on the last day of the biweekly pay period can be paid 9 days later, depending on when the overtime data is picked up by the Comptroller. (Aff. Grunwald ¶¶5, 6; Aff. Boniface, 9).

The practical necessities of the overtime payroll process between 2014 and 2019 were described by Susan Hembach ("Hembach"), the Correction Officer who processed overtime slips for 17 years in the Human Resources Unit of the Sheriff's Department ("the Unit"), until 2019. (Ex. BB, Def. SOMF, ¶¶ 53-55, 57, 60-62). At her deposition, Hembach testified that it regularly took 15 days *after* the end of the Plaintiffs' biweekly pay period for the Unit and the County Comptroller to process and pay overtime:

> Q. I think you answered this question already but I just wanted to clarify, so the deadline for when the overtime information had to be input in order for checks to be cut, that was every *two weeks*, correct?
> A. Every two weeks…the end of the pay period was always on a *Monday*, we gave employees until noon on *Tuesday* to submit those slips, and we had 'til *Thursday* evening to input them…
> Q. So paychecks would be input -- sorry. Was Friday the payday that checks would be issued?

[1] Hembach testified at her deposition that the County wanted to go to a new electronic timekeeping system around 2016, and implement time clocks for the Corrections Department, and move away from overtime slips, but "a lot of supervisors, as far as security...and captains early on" objected to using a new timekeeping system. (Ex. BB, Def. SOMF ¶¶71-74).

A. Usually on a *Wednesday*, Wednesday evening for *Thursday*.
Q. Got you. So then that -- when you would have to get everything in by the end of business on Thursday, that would be for a check that would be cut the following Wednesday.
A. ***The one after that.***
Q. ***The one after that, okay.***

(emphasis added). (Ex. BB, Def. SOMF ¶¶57, 60-62).

As Hembach testified, the Correction Officers biweekly pay period ended on a *Monday*, and it took several days, from Tuesday to Thursday, *after the end of the biweekly pay period* for the Unit to process the Correction Officers' overtime slips. (*Id*). She testified further that Sheriff Sposato returned the overtime slips that he reviewed to the Unit on time, most of the time, by *Wednesday*. (*Id*. ¶64). In her affidavit, Marisa Howard, the present Director of the County's Office of Human Resources, who has worked in the Human Resources Office since 2015, testifies that before September 2020, Department heads (like Sheriff Sposato), were *required* to review batches of overtime documents. (Aff. Howard, 1, 6, ¶2, 231). After the Unit processed the overtime slips, the County Comptroller had to review the overtime data with Unit, check for errors, make adjustments, audit the overtime data, run the overtime calculations, issue Overtime Certification Reports and obtain approvals from Department heads and higher level officials, before the overtime checks could be issued. (Ex. BB, Def. SOMF ¶¶57, 60-61; Aff. Howard, ¶¶17-18, 23; Aff. Grunwald ¶¶9-12).

Between March and May 2020, Howard eliminated certain steps in the payroll process, to streamline the process, with the intention of ensuring compliance with the FLSA. (*Id*. ¶¶15-22). In October 2020, the County implemented the PeopleSoft electronic payroll system, which shortened the time for the Comptroller to issue overtime paychecks, as Michael Grunwald, the County's Director of Payroll and Benefits since 2009, testifies in his affidavit. (*Id*. ¶23, Aff. Grunwald ¶1-5). Overtime checks can now be issued 9 days from the *last day* overtime was worked

in the biweekly pay period. (Aff. ¶Boniface 9). Investigator Lieutenant Michael Boniface ("Lieutenant Boniface"), who has worked for the County for 26 years, and who has supervised the Human Resources Unit of the Sheriff's Department since 2022, testifies in his affidavit: "[m]ost Correction Officers are paid overtime within two bi-weekly pay periods." (Aff. Boniface, ¶¶ 1, 4, 8; Ex. BB, Def. SOMF ¶57). Lieutenant Boniface testifies further that he "is not aware of complaints from Correction Officers about untimely payment of their overtime, *except when payments take longer, due to the Correction Officers having to correct their overtime slips*." (Aff. Boniface ¶20).

However, the Plaintiffs' version of the answer to the factual question above is not supported by the evidence. They allege, *with no citation to evidence*, that "prior to the time Sheriff Sposato became Sheriff," "Nassau County established a longstanding uniform system for generating overtime payroll. Overtime checks were issued 6 days later than regular-time checks, so that the County could have the time to input and process overtime payments." (Pl. Mem. Law 9, ¶2). (Pursuant to FRCP 56(c)(2), the County objects to these allegations "not supported by admissible evidence" and asks this Court to strike the allegations.). Yet Marisa Howard, who has worked in the County's Human Resources Office since 2015, testifies in her affidavit that: "there has been no regular County payroll schedule for overtime for Correction Officers to be paid within six (6) days of the end of their bi-weekly pay period." (Aff. Howard, ¶25). The Plaintiffs allegedly rely on the purported deposition testimony of a payroll clerk for the allegation that 6 days was sufficient to process overtime payment.[2] (Pl. Mem. Law 9, ¶2). However, the payroll clerk made no

[2]Although the Plaintiffs allege the payroll clerk, Louis Buonomo ("Buonomo"), was "the official charged with processing overtime payments from 2007 through 2017," he was neither an official nor the only employee charged with processing overtime payments. Buonomo testified at his deposition: "I think my job title was "Accounting Assistant," but basically I was a payroll clerk" and that Hembach, "an officer," worked with him. (Pl. Mem. Law, 3, ¶2; **Ex. S**, Buonomo Dep. Tr., 8: 23-25; 47:15-16).

statement that overtime was previously paid 6 days after the biweekly pay period or that 6 days were sufficient to input and process the overtime payments in his deposition, in the transcript pages the Plaintiffs cite; the word "six" and the number "6" appear nowhere in the transcript, as confirmed by the transcript's index. (Pl. Mem. Law, 9, ¶2, *citing* Dep. Tr. Buonomo 32:5-11; 33:2-13; 62:25-63:4; **Ex. S,** Dep. Tr. Buonomo, *cited pages, index).* Further, although the Plaintiffs cite a "Supplemental" payroll calendar from 2019, the dates of the 2019 calendar do not support the allegation that before Sheriff Sposato's term began, in 2011, overtime was paid 6 days after the biweekly period in which it was worked. (Pl. Mem. Law 1, ¶3; Pl. Ex. D, 1-3). In addition, the 2019 calendar does not indicate whether the pay dates apply to one or two bi-weekly pay periods. (Pl. Ex. D, 1-3).

The Plaintiffs proffer no evidence to show the County's payment of overtime within two biweekly pay periods between 2014 and the present was not "as soon after the regular pay period as [was] practicable" and took longer than "reasonably necessary for the employer to compute and arrange for payment," pursuant to 29 C.F.R. §778.106. The Plaintiffs do not mention or concern themselves with the practical steps the Unit has had to take in processing 3,000 biweekly overtime slips and the Comptroller's steps in reviewing, checking, adjusting, auditing, calculating, and reporting on and obtaining multiple approvals of overtime before checks were issued. (Ex. BB. Def. SOMF¶¶57-62; Aff. Howard, ¶¶17, 18, 21, 23; Aff. Grunwald ¶9-12). Instead, the Plaintiffs denigrate former Sheriff Sposato for taking the time to review the Plaintiffs' overtime slips for errors and request corrections, although his review was fiscally prudent, and required, pursuant to the County's policies for Department heads to review overtime documents, according to Howard, and timely, according to Hembach. (Pl. Mem. Law, 3, ¶2; Howard Aff. ¶¶11, 12, 21; Ex. BB. Def. SOMF ¶¶38, 42-46, 64,125, 129, 131). Even before Sheriff Sposato began his term, in 2011, the

Deputy County Executive directed Department Heads to implement procedural controls on time records, including checking for original signatures, which is also what Sheriff Sposato did. (Ex. F, 1; SOMF ¶46). Further, even before Sheriff Sposato's term, the County Office of Human Resources was required to randomly select timesheets and/or leave slips to review them for completeness, which is also what Sheriff Sposato did. (*Id.*, 2; SOMF ¶¶22, 42, 125). Corrections Department memoranda during the relevant time period show that overtime slips were required to be submitted for review and approval to Corrections Captains, Deputy Undersheriffs and the Corrections Commissioner, not just Sheriff Sposato. (Ex. F, 5-9; SOMF ¶¶126-130). In 2020, Corrections Commissioner Daniel Donahue issued a policy memo to Corrections Captains and other high-ranking Officers stating that overtime slips not properly filled out were to be returned to staff, which Sheriff Sposato also stated in a policy letter to the Plaintiffs' union. (**Ex. AA**, Letter; BB, Def. SOMF ¶¶45, 131). Therefore, the policy to review and correct overtime slips was not "personal" to Sheriff Sposato, as the Plaintiffs allege. (Pl. Mem. Law, 3, ¶2).

Although the Plaintiffs allege "Sposato implemented a plan for the Sheriff's Department…to gum up the successfully established policy and practice of processing overtime payments," the Plaintiffs *cite no evidence*. (Pursuant to FRCP 56(c)(2) and (e), the County objects to these allegations "not supported by admissible evidence" and asks this Court to strike the allegations.). Further, when the payroll clerk the Plaintiffs rely on was asked at his deposition: "[a]nd if you weren't able to get it [the overtime slip reviewed by Sheriff Sposato] entered within the end of the pay period, you would make sure that it was entered within the following pay period; is that correct?" the answer was "Yeah." (Ex. BB, Def. SOMF ¶117). This exchange actually supports that the overtime slips Sheriff Sposato returned on time on Wednesday to the Unit were not "gummed up" or delayed, because the Unit's entry of overtime slips for the pay period

*regularly* took place *after* the end of the pay period, from Tuesday to Friday, which was "within the following pay period," and not "within the end of the pay period," which was Monday. (Ex. BB, Def. SOMF ¶¶57, 60-62, 64).

The Plaintiffs further attempt to smear Sheriff Sposato by quoting an inflammatory newspaper article from 2011, three years before the alleged relevant time period began in 2014, but the article is outside of the statute of limitations and irrelevant to the issue here. (Pl. Mem. Law, 2, ¶3; Pl. Ex. X). Moreover, the newspaper article is inadmissible hearsay, pursuant to Federal Rule of Evidence ("FRE") 802. "[N]ewspaper articles containing quoted remarks are hearsay within hearsay-they contain out of court statements by the quoted individual, within a document that is itself an out of court statement." *Mandal v. City of New York,* No. 02-CV-1234, 2006 WL 3405005, at *1 (S.D.N.Y. 26, 2006). *See Ladner v. City of New York,* 20 F. Supp. 2d 509, 519 (E.D.N.Y. 1998), *aff'd,* 181 F.3d 83 (2d Cir. 1999)("newspaper article [was] inadmissible hearsay and unusable to defeat summary judgment"); *McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 706, n.12 (S.D.N.Y. 1999)("Newspaper articles are hearsay, however, and therefore are not admissible evidence of New York City Police Department policy or custom."). Further, the article's reference to crime is unfairly prejudicial, confuses the issues and risks misleading a jury, and pursuant to FRE 403, this Court should exclude the article, because its alleged "probative value is substantially outweighed by the danger of unfair prejudice or confusion of the issues." *Bohack Corp. v. Iowa Beef Processors, Inc.,* 715 F.2d 703, 709 (2d Cir. 1983).

The Plaintiffs' blatant attempts to smear Sheriff Sposato with inadmissible evidence, no evidence, and non-evidence are unavailing and fail to support the Plaintiffs' allegation of the County's willful FLSA violation, in their damages argument. (Pl. Mem. Law, 31, ¶¶2). Moreover, Sheriff Sposato's term ended in 2017, and the Plaintiffs fail to support or even mention anyone

else's alleged willfulness from 2018 to the present. (Ex. BB, Def. SOMF 22).

In sum, the County has shown, based on the indisputable evidence, that its overtime payments to the Plaintiffs were timely under the FLSA, pursuant to case law in the Second Circuit and 29 C.F.R. §778.106, and the Plaintiffs fail to show the overtime payments were untimely. Therefore, this Court must deny the Plaintiffs' summary judgment motion, grant summary judgment to the County, and dismiss this action.

**II(A). ON THE RECORD, THIS COURT GRANTED LEAVE FOR THE COUNTY TO PLEAD THE FLSA §207(k) EXEMPTION IN AN AMENDED ANSWER; THE COUNTY DID SO; BUT THE PLAINTIFFS NOW ALLEGE THAT THE COUNTY FAILED TO RAISE THE EXEMPTION**

The Plaintiffs lard their memorandum of law with many references to liquidated damages, which they presume are their due, as reflected by their framing their claim as a tendentious, rhetorical statement: "The only claim at issue is Plaintiffs' entitlement to liquidated damages for late-paid overtime." (Pl. Mem. Law, 1, ¶1; 6-8; 17, 22-24). However, the Plaintiffs put the wrong cart before the wrong horse. Liability *precedes* damages, and because the County has no liability for untimely overtime payment under the FLSA, as shown above, no liquidated damages are warranted, pursuant to FLSA §216(b). For the sake of argument only, even if this Court were to consider liquidated damages, the County is entitled to assert its statutory, partial overtime exemption against the Plaintiffs, who are employees of a public agency engaged "in law enforcement activities" in a correctional institution, pursuant to FLSA §207(k), to reduce the Plaintiffs' alleged liquidated damages. Yet the Plaintiffs allege here that the County is "barred from raising the applicability of the Section 207(k) exemption in this case" because "[t]he very first time the Section 207(k) exemption was raised in this case was in a purported 'Amended Answer to the Consolidated Complaint,' filed on November 5, 2021." (Pl. Mem. Law, 10-11). Their allegation is false. The certified transcript of the parties' conference before this Court, on

August 16, 2021 shows that the County raised the FLSA §207(k) exemption and this Court granted leave for the County to plead the exemption as an affirmative defense in an amended answer, after the Plaintiffs consented. (**Ex. V**, Tr. Conference). In the court conference before Magistrate Judge Stephen I. Locke, the following statements were made by counsel for the parties (Deanna Panico for the County and James Murphy for the Plaintiffs) and Judge Locke, on the record:

> THE COURT [Judge Locke]: Yes?
> MS. PANICO [[for the County]: There's just one additional issue that I wanted to raise. It came up in the context of the mediation. And that is with respect to 207(k) of the FLSA. During the mediation that we held, the plaintiffs had raised the issue that they did not feel that the defendants properly pled 207(k) as an affirmative defense. It was defendant's position that 207(k) does not need to be pled because it is not an affirmative defense, but rather part of the general FLSA statute. In other words, it's not one of the exemptions listed in Section 213.
> THE COURT: Right.
> MS. PANICO: But in any event, I'm concerned going forward that this would be an issue with respect to summary judgment or going forward. Defendants are seeking leave to amend their answer to specifically list Section 207(k) as an affirmative defense just so that it does not create issues down the road. I, obviously, would be *happy to have Your Honor grant leave for us do that today.* But if you would prefer for us to brief it, we can do that as well.
> THE COURT: Let's pretend for a moment that I haven't memorized the entire statute, 207(k) overtime is what?
> MS. PANICO: 207(k) essentially extends the permissible non-overtime work week. So, instead of a 40-hour work week, the plaintiffs would be required to work, I believe it's over 177 [sic] hours in a 28-week work cycle before they would hit FLSA overtime.
> THE COURT: I see…
> MR. MURPHY [for the Plaintiffs]: *I don't think we made any issue over waiver or anything like that. So, to the extent that the County wants to put in an amended answer for the Burns plaintiffs on that issue, just raising a 207(k) affirmative defense, we wouldn't have an issue with that.*
> THE COURT: Mr. Stober?
> MR. STOBER: Well, it doesn't apply to me, so I have no position on it.
> THE COURT: Okay. So, there you go, Ms. Panico, *we saved one brief…So, Ms. Panico, you'll plead it…*
>
> (emphasis added). (*Id.,* 8-11).

Therefore, the record evidence shows that this Court granted leave for the County to plead (and replead) [3] the FLSA §207(k) exemption as an affirmative defense in an amended answer, and the Plaintiffs consented. Thereafter, in answer to the "Consolidated Complaint,"[4] filed by counsel for the *Burns* Plaintiffs, James Murphy, and counsel for the *Arciello* Plaintiffs, Louis Stober, the County filed an "Amended Answer to the Consolidated Complaint," on November 5, 2021, specifying numerous County titles subject to the FLSA §207(k) exemption, including "Correction Officers." (**Ex. W**, Consol. Complt.; **Ex. U**, Amend. Answer to Consol. Complt., 13-14). Thus, the County properly raised and pled the §207(k) exemption, pursuant to FRCP 15.

FRCP 15 states: "a party may amend its pleading only with the opposing party's written consent or *the court's leave*. The court should freely give leave when justice so requires." (emphasis added). Here, this Court granted leave to the County; therefore, the County's amended pleading was proper, pursuant to FRCP 15.

Further, "[n]umerous courts have held that 'absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time.'" *Schwind v. EW & Assocs., Inc.,* 357 F. Supp. 2d 691, 698 (S.D.N.Y. 2005). The County raised the §207(k) affirmative defense in its memorandum of law for its summary judgment motion, served on the Plaintiffs on February 12, 2026. (**Ex. Y**, Def. Mem. Law, 14, 28). The County raises the §207(k) affirmative defense again here. There is no prejudice to the Plaintiffs because the Plaintiffs are indisputably not surprised by the County raising the §207(k) affirmative defense at summary judgment, considering they consented to the defense in 2021. Therefore, even if the County had not raised the §207(k) affirmative defense before summary judgment (although the County did

---

[3] The County's original Answer, June 7, 2017, pled the FLSA exemptions as an affirmative defense: "Plaintiffs were exempt employees pursuant to the FLSA exemptions." (**Ex. Z**, Answer, 9).

[4] Judge Arthur D. Spatt consolidated *Burns* and *Arciello*, *et al. v. County of Nassau*, by an Order entered October 10, 2018. (**Ex. X**, Order).

raise it before), the defense is properly raised here at summary judgment.

Moreover, in discovery, the County produced a 2015 determination letter by the U.S. Department of Labor ("the DOL"), which ruled in favor of the County on the Corrections Officers' overtime claims, stating that §207(k) was applicable to the Correction Officers. (**Ex. C**, DOL Letter, 1). The letter stated:

> Exemptions: Section 7(k) of the FLSA allows law enforcement officers to work a cycle between seven and twenty-eight days with overtime for the excess hours pro-rated on 171 hours respective to a twenty-eight day schedule or 6.1 hours per day. Correction Officers worked either a fifteen (15) day schedule or a seven (7) day schedule. The exemption was granted.

In addition, the County also produced in discovery the §207(k) work period schedule for Correction Officers, showing the 5 days on-2 days off- 5 days on-3 days off- or 15-day work period for Correction Officers in security platoons and the 7-day Monday-Friday work period for other Correction Officers, with their assigned hours. (**Ex. T,** Work Periods).

Further, considering Judge Locke's last statement at the Court conference was also an Order (equivalent to "you will plead it"), pursuant to Local Civil Rule 6.2, Judge Locke's oral Order is enforceable. "Orders on Motions. A memorandum signed by the court of the decision on a motion that does not finally determine all claims for relief, *or an oral decision* on such a motion, will constitute the order unless the memorandum or oral decision directs the submission or settlement of an order in more extended form." (emphasis added). Joint Local Rules, S.D.N.Y. and E.D.N.Y. (January 2, 2026), Rule 6.2. *See In re MarketXT Holdings Corp.,* 336 B.R. 39, 54 (Bankr. S.D.N.Y. 2006)("A party may be held in civil contempt for violating an oral Court order.").

In sum, as a matter of law, based on the indisputable evidence, the County has properly raised and pled the FLSA §207(k) affirmative defense.

*continued*

**II(B). THE FLSA'S §207(K) EXEMPTION AND §207(H) CREDITS ARE APPLICABLE TO REDUCE THE PLAINTIFFS' ALLEGED LIQUIDATED DAMAGES, BUT THE PLAINTIFFS FAIL TO DO SO**

Although no liquidated damages are warranted here, pursuant to FLSA §216(b), for the sake of argument only, even if this Court were to consider liquidated damages, the FLSA's §207(k) exemption and §207(h) credits are applicable to reduce the Plaintiffs' alleged liquidated damages, but the Plaintiffs fail to do so. Further, the Plaintiffs fail to comprehend the significance of these statutory provisions. (Pl. Mem. Law, 12, ¶3, 13, ¶2).

The overtime provision of the FLSA, states in relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, *for a workweek longer than forty hours* unless such employee receives compensation for his employment in excess of the hours above specified at *a rate not less than one and one-half times the regular rate* at which he is employed.

(emphasis added). 29 U.S.C. §207(a)(1).

Therefore, the FLSA's general rule is that employees must be paid time and a half for hours worked above 40 hours in a week ("the 40-hour threshold"). However, "Congress recognized that certain jobs are not easily susceptible to the workweek method of wage and time calculations, and therefore provided special calculation methods for some trades, including fire protection and law enforcement." *Feaser v. City of New York,* No. 93 CIV. 5739 (LAP), 1995 WL 350848, at *2 (S.D.N.Y. June 9, 1995). Under the FLSA's statutory §207(k) partial exemption, "employees engaged in…law enforcement activities," employed by public agencies, like the County, may work a schedule between 7 and 28 days, with a higher overtime threshold. *See Pilot v. City of Yonkers,* No. 19-CV-8169, 2021 WL 4429839, at *5 (S.D.N.Y. Sept. 27, 2021)("(Section 207(k) provides a partial exemption for public agency employers of law enforcement…by upping the threshold at which overtime compensation entitlement begins.").

FLSA §207(k) states in relevant part:

> No public agency shall be deemed to have violated subsection (a) with respect to the employment of any employee in…law enforcement activities (*including security personnel in correctional institutions*) if…in the case of such an employee to whom *a work period of at least 7 but less than 28 days applies*, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours…bears to 28 days,

(emphasis added). 29 U.S.C. §207(k)(2).

The regulations at 29 C.F.R. §553.201(a) have modified the ratio set forth in §207(k)(2) for law enforcement employees, from 216 hours over 28 days, to 171 hours over 28 days.

> [T]he 216–hour standard has been replaced, pursuant to the study mandated by the statute…In the case of such employees who have a work period of at least 7 but less than 28 consecutive days, overtime compensation is required *when the ratio of the number of hours worked to the number of days in the work period exceeds the ratio of …171…hours to 28 days.*

(emphasis added).

The ratio in §553.201(a) above is easily calculated as: 171 hours worked divided by 28 days in the work period = 6.107 ratio. Thus, applying the same ratio here, for the Plaintiffs with a 7-day work period: 6.107 ratio multiplied by 7 days = 42.749 hours as the applicable, higher overtime threshold, or rounded, 43 hours over 7 days, instead of a threshold of 40 hours per week. (Ex. T, Work Periods). *See Feaser*, 1995 WL 350848, at *3. ("Thus, for personnel who have a work period of 7 days, no overtime compensation is required until the number of hours worked exceeds…42.75 hours for law enforcement personnel."). For the Plaintiffs here with a 15-day work period, their applicable overtime threshold is: 6.107 ratio multiplied by 15 days = 91.605 hours, or rounded, a 92-hour applicable, higher overtime threshold over 15 days. (Ex. T, Work Periods).

To further illustrate, in *Pilot v. City of Yonkers*, the court held that the law enforcement plaintiffs' overtime "commences after 153 hours of work in a twenty-five-day work period, instead of after forty hours of work in a seven-day period. 29 C.F.R. §553.230(c)." No. 19-CV-8169, 2021

WL 4429839, at *1, 6 (S.D.N.Y. Sept. 27, 2021). To arrive at the 153-hour overtime threshold, one would use the same 6.107 ratio from the above regulations: 6.107 ratio multiplied by 25 days in the work period = 152.675 hours, rounded to 153 hours, over the twenty-five day work period, as the applicable, higher overtime threshold in that case.

The higher overtime threshold in §207(k) and §553.201 results in a cost savings for public agencies like the County with §207(k) employees, because public agencies are not required to pay FLSA overtime until a specific threshold greater than the 40-hours per week threshold is reached. *See Foley v. City of Buffalo*, No. 06-CV-49S, 2011 WL 3176455, at *6 (W.D.N.Y. July 27, 2011) ("Section 207(k) was intended to alleviate the impact of the [Labor Act]…law enforcement activities of state and local government by providing for work periods of up to 28 days [and] establishing somewhat higher ceilings on the maximum number of hours which could be worked before overtime compensation had to be paid."). The cost savings for public agencies *applies also to potential damages* in an FLSA action, such as this action, as no liability and no damages will apply to overtime hours worked below the applicable FLSA overtime threshold. *See Feaser,* 1995 WL 350848, at *6. ("damages should be calculated according to § 207(k). To rule otherwise would create a 'penalty' without support in the legislative history or language of the statute."). For example, in *Feaser,* the court cited a case where the measure of damages was at issue and in that case a "43 hour week was appropriately used in determining damages" rather than a 40-hour week. (*Id.* at *4, *citing Mills v. State of Maine,* 853 F. Supp. 551 (D. Me. 1994)).

"To claim a section 207(k) exemption, an employer need only demonstrate: (i) that its employees are engaged in…'law enforcement activities' within the meaning of the statute, and (ii) that it has adopted a qualifying 'work period'—defined by regulation as 'any established and regularly recurring period of work which is at least seven but no more than twenty-eight

consecutive days in length.'" *Pilot*, 2021 WL 4429839, at *5–6. Here, the County properly claims the §207(k) exemption because the Plaintiffs are engaged in "law enforcement activities" within the meaning of the statute, and the County adopted qualifying "work periods" of 7 and 15 days, which are "at least seven but no more than twenty-eight days in length." (Ex. T, Work Periods). As discussed in Point II(A) above, the work period schedule produced in discovery shows that for the Plaintiffs who are Correction Officers assigned to security platoons, the County adopted a 15-day work period, and for the Plaintiffs who are Correction Officers in other units, the County adopted a 7-day work period. (*Id.*). Therefore, the §207(k) exemption is applicable here, and must be taken into account in the Plaintiffs' calculation of alleged liquidated damages, to reduce the alleged damages, by employing the FLSA's applicable, higher overtime thresholds.

As also discussed in Point II(A) above, the DOL letter produced in discovery held that the County's Correction Officers "worked either a fifteen (15) day schedule or a seven (7) day schedule," pursuant to "Section 7(k) [which] allows law enforcement officers to work a cycle between seven and twenty-eight days with overtime for the excess hours pro-rated on 171 hours respective to a twenty-eight day schedule or 6.1 hours per day." (Ex. C, DOL Letter). This letter confirms the Plaintiffs' 7-day and 15-day schedules and the ratio used to calculate their higher overtime thresholds.

However, the Plaintiffs seriously fail to comprehend the significance of the FLSA §207(k) exemption and they fail to apply the exemption to their alleged liquidated damages. (Pl. Mem. Law 12, ¶3; 13, ¶2; Pl. Ex. W). The Plaintiffs incorrectly and incredibly allege that their 7-day and 15-day work periods do not constitute work periods "as defined under the Section 207(k) exemption or under the implementing regulations, 29 C.F.R. §553.224(a)." (Pl. Mem. Law, 14, ¶2). Yet 29 C.F.R. §553.224(a) states: "As used in section 7(k), the term 'work period' refers to

any established and regularly recurring period of work which, under the terms of the Act and legislative history, cannot be less than 7 consecutive days nor more than 28 consecutive days." Therefore, the County's established and regularly recurring 7-day and 15-day periods of work are indeed "work periods," pursuant to §207(k) and 29 C.F.R. §553.224(a), and the Plaintiffs' allegation to the contrary must fail. *See Foley*, 2011 WL 3176455, at *5. ("Thus, the weight of circuit authority holds that an employer establishes a work period within the meaning of §207(k) simply by establishing a work period.").

Further, the Plaintiffs seriously confuse "work periods" with "pay periods." (Pl. Mem. Law, 14, ¶2). They allege that the County "never calculated overtime pay, or actually paid overtime pay, based on a cycle of days or schedule of hours related to a work period of 171 hours." (*Id.* 14, ¶3). However, neither §207(k) nor §553.201 require the County to pay the Plaintiffs on a 7-day or 15-day pay period schedule coinciding with the Plaintiffs' work periods, and the Plaintiffs do not cite to any law in the Second Circuit supporting their allegation.

Nor was there any need for the County to separately calculate the Plaintiffs' FLSA overtime pay, because all overtime work was calculated at the overtime rate, and because *the County paid the Plaintiffs for more overtime hours than were required by the FLSA thresholds*, pursuant to its collective bargaining agreement("CBA") with the Plaintiffs' union. (Ex. C., 1, ¶4, 2, ¶2). For example, whereas the applicable, higher FLSA threshold required the Plaintiffs with a 7-day work period to be paid overtime after 43 hours, the County paid the Plaintiffs *at the overtime rate for any hours in excess of 8 hours in a day or in excess of their normal working hours* (35 hours per week excluding meal periods), pursuant to their CBA. (*Id.*). Therefore, the Plaintiffs who had a 7-day work period would be paid for 8 *contractual* overtime hours *in addition to* any overtime hours which exceeded the FLSA overtime threshold of 43 hours per week (43 FLSA

overtime hours minus 35 regular hours = 8 non-FLSA, *contractual* overtime hours).

However, the cases that the Plaintiffs cite in the First Circuit, the Northern District of Ohio and the Westen District of Washington are neither controlling nor persuasive on the applicability of the FLSA §207(k) exemption to the County, but in part support the County's position. (Pl. Mem. Law, 16). For example, the Plaintiffs quote *Holmes v. Washington*: "Department of Labor Regulations require employers under §207(k) to make some notation on the payroll records which show the work period for each employee and which indicates the length of that period and the starting time." No. C90-5366B, 1992 WL 247444, at *1 (W.D. Wash. Mar. 13, 1992). (*Id*.). Here, the County has done so, as evidenced by the work periods chart produced in discovery showing the 15-day and 7-day work periods, hours and starting times for Correction Officers. (Ex. T).

The significance of the foregoing §207(k) analysis is that in calculating alleged FLSA liquidated damages, the Plaintiffs must only count FLSA overtime hours exceeding 43 hours over a 7-day work period and FLSA overtime hours exceeding 92 hours over a 15-day work period, and must not count contractual overtime hours towards damages. However, here the Plaintiffs have denied that the FLSA §207(k) exemption is applicable, and they have failed to apply the §207(k) exemption in their alleged damages calculations, which therefore, must be grossly incorrect and grossly overstated. (Pl. Mem. Law, 17; Pl. Ex. W). In the Plaintiffs' Exhibit W, which shows their alleged damages, all overtime hours are mistakenly counted, irrespective of whether they are FLSA overtime hours exceeding the applicable, higher overtime thresholds, or contractual hours, below that threshold. Therefore, the Plaintiffs' liquidated damages calculations are highly erroneous.

Moreover, the County is entitled to the FLSA's statutory, contractual overtime credits, pursuant to 29 U.S.C. §207(h) and §207(e), to further reduce the alleged liquidated damages. Pursuant to 29 U.S.C. §207(h)(2) and §207(e)(5),(7), "employers receive credit for 'extra

compensation provided by a premium rate' for hours worked 'in excess' of an employee's regular working hours…[also] employers receive credit for 'extra compensation provided by a premium rate' of one and one-half times the rate paid for non-overtime for work performed 'outside" 'the regular workday or workweek." *Scott v. City of New York*, 592 F. Supp. 2d 475, 481 (S.D.N.Y. 2008)(applying contractual credits to overtime damages).

However, the Plaintiffs' memorandum of law fails completely to mention this statutory credit. Yet the contractual credits must be taken into account in the Plaintiffs' calculations of alleged liquidated damages. *See Reich v. S. New England Telecommunications Corp.,* 892 F. Supp. 389, 405 (D. Conn. 1995), *aff'd*, 121 F.3d 58 (2d Cir. 1997)("the plaintiff shall submit a proposed form of order specifically…calculating the back overtime pay and liquidated damages due, *after consideration of workweek by workweek credits allowed* "). (emphasis added). However, the Plaintiffs have failed to apply the statutory credits, so their alleged liquidated damages are highly erroneous. (Pl. Ex. W).

The DOL letter on the Correction Officers' overtime demonstrates that both the FLSA §207(k) exemption and the §207(h)(2) contractual credits are properly applied to any alleged liability to reduce potential damages:

> Taking into account the exemption (FLSA Sec.7(k), exclusions and credits (29 CFR 778.200(a)(5) & 778.202(a), and the paid meal periods (29 CFR 553.223) and reviewing the overtime hours worked by a representative sample of Correction Officers it was determined: that although the manner in which the County calculated FLSA Section 7 wages was incorrect, since the net result of the overtime payments under the CBA resulted in higher payments than what were required by Section 7, no Section 7 deficiencies existed.
>
> (Ex. C).

The regulations at 29 C.F.R. §778.201 explain that there are two ways overtime compensation is credited under §207(h):

> Certain premium payments made by employers for work in excess of or outside of

> specified daily or weekly standard work periods…are regarded as overtime premiums. In such case, the extra compensation provided by the premium rates need not be included in the employee's regular rate of pay for the purpose of computing overtime compensation due under section 7(a) of the Act. Moreover, under section 7(h) this extra compensation may be credited toward the overtime payments required by the Act.

Put more simply, "the 'premium' portion of the contractual overtime rate (the extra one-half on top of the regular rate) may be used to offset the defendant's statutory overtime liability." *O'Brien v. Town of Agawam*, 350 F.3d 279, 289 (1st Cir. 2003). Therefore, here, for all of the Plaintiffs' contractual overtime hours, half of the regular rate per hour for each contractual overtime hour must be used to offset the alleged liquidated damages. However, the Plaintiffs have failed to apply the credits for contractual overtime to their alleged damages, which are erroneous. (Pl. Ex. W).

## III. THE PLAINTIFFS' SPURIOUS ALLEGATIONS HAVE NO FACTUAL OR LEGAL BASIS, AND THEIR ALLEGED LIQUIDATED DAMAGES ARE GROSSLY OVERSTATED.

Although no liquidated damages are warranted here, pursuant to FLSA §216(b), for the sake of argument only, even if this Court were to consider liquidated damages, the Plaintiffs' spurious allegations in Point III of their memorandum of law ("Damage Calculations") have no factual or legal basis, and their alleged liquidated damages are grossly overstated. The Plaintiffs spew out multiple bogus allegations against the County, with no citations to any evidence, complaining about what was allegedly not produced to them. (Pl. Mem. Law 18, 20). (Pursuant to FRCP 56(c)(2) and (e), the County objects to these specious allegations "not supported by admissible evidence" and asks this Court to strike the allegations.).

First, this action commenced on May 4, 2017, nearly nine years ago. (Ex. BB, Def. SOMF, ¶149). The parties' document demands and responses were served between 2018 and 2022. (Decl. Andors). By Order of Judge Locke, discovery was closed on October 23, 2025. DE [97]. The County has not been made aware of any deficiency in production, either before or after discovery closed, and

raising these allegations now is suspect. Second, the County produced the following records, including but not limited to: the Plaintiffs' full names and hire dates, the Plaintiffs' CBA, and for the sample Plaintiffs in the sample years: copies of their overtime slips showing their overtime hours worked with dates and preferences for compensatory time or cash payment; time and leave records showing their sick days and vacation leave; documents with: the time and day of the week their workweek begins; the length of their shifts; their meal periods; their work periods, including their 7-day and 15-day schedules; their exemption under FLSA §207(k); their annual salary; a check archive report in manipulatable form showing their units of regular and overtime pay earned with the dates earned and the amounts paid; and Excel spreadsheets showing their salaries, the dates overtime was worked, dates overtime was paid, their units of regular pay and overtime pay earned per date. (Decl. Andors). The foregoing documents satisfy the recordkeeping requirements of 29 C.F.R. §516.2 and 29 C.F.R. 553.51, despite the Plaintiffs' allegations. Therefore, all of the Plaintiffs' allegations about the records the County allegedly did not produce are spurious. (Pl. Mem. Law, 18, 20). Accordingly, the Plaintiffs' legal argument, citing cases where the employer did not produce "evidence of the precise amount of work performed" or the employer violated "their statutory duty to keep proper records," is inapplicable here. (Pl. Mem. Law, 18-21). Third, it is much easier to launch bare accusations against another party than actually support allegations with admissible evidence, but such accusations have no place in summary judgment. (FRCP 56).

The Plaintiffs further allege that the County was required to produce records showing which hours were paid pursuant to the FLSA and which hours were paid under a collective bargaining agreement, but they cite no law to support their allegation. (Pl. Mem. Law 18, ¶1). Yet the Plaintiffs could have calculated these hours and payments themselves based on the above listed documents. (Decl. Andors, Aff. Oliveri). The Plaintiffs apparently did not do this work and they

should not blame the County. The County did do an analysis of the parties' sample for contract and FLSA overtime hours and the length of time to payment using the documents listed above, for its anticipated defense. (Ex. R, Analysis; Decl. Andors; Aff. Oliveri).

In the County's analysis of FLSA and contract overtime hours, it is apparent that many of the entries are for contractual overtime hours, not FLSA overtime hours. (Ex. R). The County has created the bar graphs below summarizing the average length of time to pay FLSA overtime. (*Id.*).

**Days To Pay Overtime, Entire Sample of Plaintiffs, 2014-2020**

| No. of Overtime Entries | Time to Payment | Percent of Entries[5] |
|---|---|---|
| 0 | 0-14 days to pay | 0% |
| 1368 | 15-28 days to pay | 89.3% |
| 151 | 29-42 days to pay | 9.9% |
| 0 | 43-56 days to pay | 0% |
| 2 | 57-70 days to pay | .1% |
| 12 | 71+ days to pay | .7% |
| Total entries: 1,533 | | Total: 100% |

**Days To Pay Overtime, Security Platoons Only In The Sample, 2014-2020**

| No. of Overtime Entries | Time to Payment | Percent of Entries |
|---|---|---|
| | 0-15 days to pay | |
| 863 | 16-30 days to pay | 92.1% |
| 73 | 31-45 days to pay | 7.8% |
| | 46-60 days to pay | |
| 1 | 61-75 days to pay | .1% |
| | 76+ days to pay | |
| Total entries: 937 | | Total: 100% |

The County has concluded that most of the FLSA overtime payments in the sample, 89.1%, were made within 15-28 days, or two biweekly pay periods, and 92.1% of the payments for security platoons in the sample were made in 16 to 30 days. (*Id.*). A fraction of payments in the sample, 9.9% or 7.8% respectively, were paid within the next pay period after the Comptroller calculated

[5] Note that although all FLSA overtime entries in the sample were analyzed, approximately 2% of the entries appeared to be aberrant; 35 entries between March 2020 and April 2020, during the COVID-19 pandemic, had between 24 and 31.75 of overtime hours worked in a single day. These aberrant entries were not included in the above charts.

the overtime pay. (*Id.*). The remaining .1% to .7% of payments were outliers. (*Id.*).

In contrast to the County's analysis, the Plaintiffs' alleged liquidated damages calculations in their Exhibit W use 80 hours regular per biweekly work period (or 40 hours per week), rather than actual hours worked, as their starting point to count overtime hours. (Pl. Ex. W). The Plaintiffs fail to count FLSA overtime starting at 43 hours per week or 92 hours per 15 days. (*Id.*). The Plaintiffs fail to subtract from the 80 hours biweekly their non-FLSA meal periods (40 to 50 minutes), and paid time not actually worked, such as sick leave and vacation leave which are not compensable as FLSA overtime hours, pursuant to 29 U.S.C. §207(e)(2) and 29 C.F.R. §778.218. (Pl. Ex. W; Ex. C, 2, ¶2). The Plaintiffs' purported calculations have no dates that overtime was worked and no dates that overtime was paid. (Pl. Ex. W). Although some alleged damages are shown in the column for "1 to 7" days and many alleged damages are shown in the column for "8 to 14 days," there is no indication of what starting and ending dates are used. (*Id.*). If "8 to14 days" is measured from the last date for submission of the Plaintiffs' overtime slips after the end of the Plaintiffs' first biweekly time period, or within two bi-weekly pay periods or 28 days in total, then pursuant to the cases in the Second Circuit discussed above and 29 C.F.R. §778.106, all of the entries shown in the column for "8 to 14 days," as well as the entries in the column for "1 to 7" days, were timely under the FLSA, and the alleged liquidated damages those columns are a nullity. (*Id.*). *See e.g. Nell v. City of New York*, No. 19-CV-6702, 2021 WL 2716523, at *8 (S.D.N.Y. July 1, 2021)("there is no required deadline by which to make payments, so long as payment is made as soon as 'practicable."); *Lynch v. City of New York*, 291 F. Supp. 3d 537, 552 (S.D.N.Y. 2018)(generally two pay periods or 28 days is timely). In the Plaintiffs' column "15 to 1000," there is no differentiation in the lengths of time between 1 and 1000, so it is impossible to tell whether these payments were made in the next (third) bi-weekly pay period or later. (Pl. Ex. W). However,

based on the evidence produced and the County's analysis, the County determined that only 9.9% of payments were made after two bi-weekly pay periods, and almost all of these were paid in the third biweekly pay period; the remaining .1% to.7%, the outliers, were made later. (*Id.*; Ex. R).

All of the Plaintiffs errors above in the Plaintiffs' calculations were made in the Plaintiffs' favor, and the resulting alleged liquidated damages are grossly overstated. (*Id.*). Therefore, this Court should disregard and strike the Plaintiffs' erroneous calculations and their inflated sum, as well as their specious allegations above.

## IV. THE PLAINTIFFS ARE NOT ENTITLED TO LIQUIDATED DAMAGES BECAUSE THE COUNTY ACTED IN GOOD FAITH COMPLIANCE WITH THE FLSA

Although the County did not violate the FLSA, if hypothetically, this Court were to find the County liable, liquidated damages should be denied, because the County has demonstrated good faith compliance with the FLSA. "The FLSA provides for liquidated damages equal to the unpaid wages due, unless the employer demonstrates to the satisfaction of the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful." 29 U.S.C. §§ 216(b), 260; *Pineda-Herrera v. Da-Ar-Da, Inc.,* No. 09-CV-5140, 2011 WL 2133825, at *4 (E.D.N.Y. May 26, 2011). "To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Garcia v. Saigon Mkt. LLC,* No. 15-CV-9433, 2019 WL 4640260, at *11 (S.D.N.Y. Sept. 24, 2019).

In this action, the indisputable evidence shows that the County has demonstrated subjective good faith by taking active steps to ascertain the requirements of the FLSA and ensure compliance. Susan Hembach, the Correction Officer who processed overtime slips for 17 years, from 2002 to 2019, in the Human Resources Unit of the Sheriff's Department, testified at her deposition that she had FLSA training when she began her job. (Ex. BB, Def. SOMF ¶¶54-56). Marisa Howard,

the present Director of the County's Office of Human Resources, who has served in various high level County positions since 2015, testified in her affidavit that in 2020, she issued a memorandum to all County Department heads, including the head of the Corrections Department, amending the overtime approval and certification process, which was intended to ensure compliance with the FLSA. (Aff. Howard, ¶¶14-15). These facts show that the County had ascertained its FLSA obligations on overtime and took steps to ensure staff compliance.

The County's compliance with the FLSA is also demonstrated by prior court and agency decisions under the FLSA, decided in the County's favor and against the County's Correction Officers. For example, in 2004, United States District Judge Denis R. Hurley issued a decision and order, in *Banschback, et al. v. County of Nassau,* an FLSA collective action by the Correction Officers, holding that there was no FLSA violation for a gap time or straight time claim for the Correction Officers' meal periods. No. 1-CV-6981 (E.D.N.Y. May 25, 2004). (**Ex. G**, *Banschback* decision). In 2015, the DOL issued a determination letter to the County's counsel, concluding that there were "no deficiencies" in the County's overtime payments to its Correction Officers, because the *overtime payments exceeded what was required by §207* of the FLSA. (Ex. C). The DOL letter also stated that the FLSA §207(k) partial overtime exemption was granted to the County for its Correction Officers. (*Id.*) Although the DOL letter was issued during the relevant time period of this action, and during Sheriff Sposato's term, there was no indication in the letter that the promptness of overtime payment under the FLSA was an issue for Correction Officers. (*Id.*). The County has complied with the recordkeeping requirements of the FLSA §207(k), 29 C.F.R. §516.2 and 29 C.F.R. 553.51. (Decl. Andors; Ex. T)**.**

Hembach also testified that the County took steps to implement a new, electronic timekeeping system and time clocks for the Corrections Department, which would have facilitated

accurate recording of FLSA overtime hours, but the superior Correction Officers insisted on using paper overtime slips. (Ex. BB, Def. SOMF ¶¶71-75). Since 2020, the County's Human Resources Department has streamlined the payroll process, to ensure compliance with the FLSA, and the Comptroller has implemented a new, electronic payroll system, at considerable expense to the County, resulting in sooner payment of overtime. (Ex. BB, Def. SOMF ¶137; Aff. Howard, ¶¶13, 15; Aff. Grunwald, ¶¶5-6, 9-11).

It was objectively reasonable for the County to believe it had more than met its legal obligations under the FLSA. For example, Sheriff Sposato testified in his deposition about his review of the Plaintiffs' overtime slips for errors: "the goal wasn't to not pay people" and "no one gets unpaid," evidencing his reasonable belief that the County met its obligations for payment of overtime. (Ex. BB, Def. SOMF ¶¶46, 49). Hembach testified that she never experienced someone working overtime and the overtime payments would not be approved and the person would not be paid for overtime work. (Ex. BB, Def. SOMF ¶70).

Thus, it was subjectively and objectively reasonable for the County to believe it complied with its FLSA obligations, demonstrating good faith, and no liquidated damages are warranted.

## V. THE STATUTE OF LIMITATIONS SHOULD BE RESTRICTED TO TWO YEARS BECAUSE THERE HAS BEEN NO WILLFUL VIOLATION OF THE FLSA

Pursuant to 29 U.S.C. §255(a), the FLSA has a two-year statute of limitations, unless a plaintiff shows that a defendant's violation of the FLSA was willful. "To prove a willful violation within the meaning of §255(a), an employee must establish that the employer either knew or showed reckless disregard for whether its conduct was prohibited by the statute." *Worley v. City of New York,* No. 17-CV-4337, 2020 WL 730326, at *10 (S.D.N.Y. Feb. 12, 2020). There is no evidence in the record of any reckless disregard of the FLSA. Rather, the record evidence shows that the County has made it a regular business practice to intentionally comply with the FLSA, and

the County did comply, as discussed above in Point IV. Sheriff Sposato testified at his deposition that he checked the overtime slips for errors and requested corrections, which was fiscally responsible and pursuant to County policy, and Hembach testified that most of the time the overtime slips he reviewed were submitted on time, which is the opposite of reckless disregard of the FLSA (Ex. BB, Def. SOMF ¶¶35, 43-49, 64, 125, 129, 131). Therefore, this Court should limit the statute of limitations for this action to two years.

## VI. THE COUNTY OBJECTS TO EACH AND EVERY PURPORTED "FACTUAL" STATEMENT IN THE PLAINTIFFS' MEMORANDUM OF LAW THAT LACKS ANY CITATION TO EVIDENCE

Pursuant to FRCP 56(c), the County hereby objects to each and every purported "factual" allegation in the Plaintiffs' memorandum of law that lacks any citation to evidence and that does not appear in the Plaintiffs' Rule 56.1 statement of material facts ("the allegations"). The County respectfully demands that this Court consider the Plaintiffs' allegations without citations as conclusory, unsupported assertions, not evidence, which do not create a statement of material fact in support of the Plaintiffs' summary judgment motion. *See DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012)("A court cannot credit a plaintiff's merely speculative or conclusory assertions.") The County further demands that this Court issue an order striking the Plaintiffs' allegations without citations from their memorandum of law, pursuant to FRCP 56(e). Such allegations include, but are not limited to, those identified above and the following:

> "These checks were limited to payment of CO's earned overtime for the preceding bi-weekly pay period." (no citation, previous cite does not show overtime was earned in the preceding pay period). (Plaint. Mem. Law, 2, ¶1).

> "This longstanding policy and practice allowed Nassau County additional time to seamlessly tabulate, process, and pay overtime wages each pay period after the regular-time checks were issued for many years." (no citation). (*Id.* 2, ¶2).

> "However, starting in or about 2013, overtime was almost always paid weeks late to Nassau County CO's." (no citation). (*Id.* 2, ¶2).

> "The delays in overtime payments were systemic and nearly total." (no citation) (*Id.*, 2, ¶3).
>
> "In many instances, workers would receive some of their overtime payments for a particular pay period timely, and others for the same pay period untimely, as a result of Defendants' practice of arbitrarily delaying processing of overtime slips." (no citation). (*Id.*, 3, ¶1).
>
> "This practice of routinely delaying overtime payments was implemented deliberately by the Nassau County Sheriff's Department." (no citation). (*Id.*, 3, ¶2).
>
> "At some point thereafter, but prior to the beginning of the statute of limitations period in this action, Sposato implemented a plan for the Sheriff's Department, which included Corrections Officers, to gum up the successfully established policy and practice of processing overtime payments." (no citation). (*Id.*).
>
> "Specifically, Sposato issued a directive that required his personal approval of overtime payments." (no citation). (*Id.*).

## VII. EDWARD MANGANO, IN HIS OFFICIAL CAPACITY AS COUNTY EXECUTIVE, SHOULD BE DISMISSED FROM THIS ACTION

The Plaintiffs named former County Executive Edward Mangano ("Mangano") as a Defendant in this action in his official capacity. However, "[a] suit against an officer in his official capacity is essentially a suit against the government entity itself." *Fishman v. Cnty. of Nassau,* No. 10-CV-3231, 2011 WL 3919713, at *6–7 (E.D.N.Y. Sept. 7, 2011)(dismissing the claim against "Mangano in his official capacity" as "duplicative" of the claim against Nassau County). Therefore, Mangano, in his official capacity, should be dismissed from this action.

Dated: Mineola, New York

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court deny the Plaintiffs' Motion for Summary Judgment, grant the Defendants summary judgment and dismiss this action, and grant any other and further relief that this Court deems just and proper.

Dated: Mineola, New York
March 20, 2026

**Bee Ready Law Group, LLP**

By: /s/ Rhoda Y. Andors
Rhoda Yohai Andors, Esq.,
Of Counsel
*Attorneys for Defendants*
170 Old Country Road, Ste. 200
Mineola, New York 11501
T. 516-746-5599 – F. 516-746-1405
Email: randors@beereadylaw.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**SHAWN BURNS, KEVIN BIEN, and BRIAN M. WISE, and all other similarly situated Correction Officers,**

**Plaintiffs,**

**-against-**

**COUNTY OF NASSAU and EDWARD MANGANO, in his Official Capacity,**

**Defendants.**
-------------------------------------------------------------------X

**Docket No. 17-CV-2721 (JMA)(SIL)**

**CERTIFICATE OF WORD COUNT**

**CERTIFICATION OF WORD COUNT IN COMPLIANCE WITH RULE 7.1(C) OF THE LOCAL RULES OF THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK**

I hereby certify that the foregoing Memorandum of Law was prepared on a computer using Microsoft Word. Pursuant to an Order of this Court dated March 12, 2026, granting leave for 5 additional pages, this Memorandum of Law has 29 pages. The total number of words in this document, inclusive of footnotes, and exclusive of the caption and signature block, is 10,262 words.

Dated: Mineola, New York
March 20, 2026

**Bee Ready Law Group, LLP**

By: /s/ *Rhoda Y. Andors*
Rhoda Y. Andors, Esq.
*Attorneys for Defendants*
170 Old Country Road, Suite 200
Mineola, NY 11510
Tel. (516) 746-5599
Fax: (516) 746-1045
randors@beereadylaw.com